THE STATE EX REL. KANSAS CITY UNIVERSITY OF PHYSICIANS & SUR-
GEONS, Appellant, v. E. P. NORTH ET AL. as State Board of
Health.—294 S. W. 1012.

Court en Banc, April 8, 1927.

**1. MEDICAL COLLEGE: Reputability: Authority of State Board.** The question whether a medical school is entitled to recognition as a medical school of good standing is one of fact, to be determined by the State Board of Health. The statute does not expressly define a reputable medical college, but the statute concerning the granting of licenses to practice medicine leaves to the board authority to determine in each case the repute of a medical college, in that it requires the applicant for a license to furnish the board with satisfactory proof that he has secured a diploma from some medical college of four years' requirements, including two years' experience in operative and hospital work at the time of his graduation.

**2. ———: ———: Former Inspection: Continued Inefficiency.** Proof of former conditions of inefficiency revealed by an inspection by the State Board of Health is but persuasive of their continuance; but where a former examination showed that relator was not a reputable medical school and its deficiencies were pointed out to it and it was warned to remedy them, an examination made two years later, which shows similar inefficient conditions and lack of equipment and proper preparation of medical students, justifies a conclusion that the former conditions have not only been continuous, but that those who are conducting the school are either wilfully disinclined or unable to comply with the requirements of the board.

3. ——: **State Board: Powers: Discretion.** The State Board of Health is a conservator of the public health, and statutes conferring upon it powers to be exercised in promoting and protecting the public health are liberally construed, and every intendment in favor of the validity of its acts is indulged. Its determination that a certain college is not a reputable medical school of four years' requirements must not be arbitrary, or oppressive, or violative of any right to which a person is entitled under the law, but with its exercise of a reasonable discretion in reaching its determination the courts will not interfere. If its acts are reasonable and thus clearly within the purview of its powers they are entitled to and will receive judicial sanction.

Corpus Juris-Cyc. References: **Appeal and Error,** 4 C. J., Section 2878, p. 908, n. 63. **Courts,** 15 C. J., Section 306, p. 919, n. 1. **Health,** 29 C. J., Section 8, p. 243, n. 54. **Physicians and Surgeons,** 30 Cyc., p. 1551, n. 49; p. 1552, n. 52.

Appeal from Jackson Circuit Court.—*Hon. Willard P. Hall,* Judge.

AFFIRMED.

*T. D. Judy, J. R. Stanley* and *T. A. Costolow* for appellants.

(1) The court erred in admitting and considering incompetent and immaterial evidence upon the part of respondents over the objection and exception of relator. (a) The court erred in permitting Dr. Hall and Dr. Trimble to testify concerning an inspection they made of relator's school long after the Board of Health had made the order which is the subject of this controversy. Laws 1921, 473; Smith v. Tel. Co., 113 Mo. App. 429; Clack v. Kansas City Elect. W. S. Co., 138 Mo. App. 205; State v. Goldfeder, 242 S. W. 403. (b) The court erred in considering as evidence in this case a report of a committee of the Board of Health to said board, which report was sent up with the return of said board to the writ of *certiorari.* State ex rel. v. Walbridge, 62 Mo. App. 162; 11 C. J. 203; State ex rel. v. Reynolds, 272 Mo. 588. (2) The finding of the court was against the evidence and the weight of the evidence. (a) The evidence was not only insufficient to show that relator's school was a non-reputable school, but on the contrary clearly showed it to be a reputable school within the meaning of the law. Laws 1923, p. 254; Laws 1921, p. 473; State ex rel. v. Clark, 230 S. W. 609. (3) The court erred in making a general finding that relator's medical school is not a reputable medical school within the meaning of the statutes of Missouri. (a) Because the court was without jurisdiction in the present proceeding to make such an order. Laws 1921, p. 473; Judson v. Smith, 104 Mo. 61; State ex rel. v. Patterson, 207 Mo. 129; Lamar v. City of Lamar, 128 Mo. 188; State ex rel. v. Adcock, 124 S. W. 1100.

*Robert W. Otto,* Attorney-General, and *J. Henry Caruthers,* Assistant Attorney-General, for respondents.

(1)   All persons desiring to practice medicine or surgery in this State, or to treat the sick or afflicted, in order to be eligible for examination by the State Board of Health shall furnish satisfactory evidence of having received a diploma from some reputable medical college of four years' requirements.   Sec. 7332, R. S. 1919, as amended, Laws 1923, p. 254.   (2)   The question as to whether any medical school is one entitled to recognition by the State Board of Medical Examiners as a medical school of good standing, is a question of fact, and any person aggrieved by reason of the action of the board shall have the right to have such question reviewed by suing out a writ of *certiorari* in the circuit court where such question shall be tried *de novo* and the court shall render such judgment as should have been rendered in the first instance.   Sec. 7332a, Laws 1921, p. 473.   (3)   Statutes enacted for the purpose of preserving the public health should be liberally construed to carry out such purpose. 29 C. J. 243; People v. Raport, 193 App. Div. 135.   Every intendment is to be allowed in favor of their validity.   29 C. J. 243, 248; Kirk v. Bd. of Health, 83 S. C. 380; La Porta v. Bd. of Health, 71 N. J. L. 89.   (4)   It is well settled that, under the police power inherent in the State, the Legislature may enact reasonable regulations for the examination and registration of physicians and the practice of medicine and surgery.   30 Cyc. 1547; Czarra v. Board Med. Supervisors, 25 App. Cases (D. C.) 448; State ex rel. Burroughs v. Webster, 150 Ind. 616; State v. State Med. Board, 32 Minn. 328; People v. Reetz, 127 Mich. 88; State v. District Court, 26 Mont. 125; Dent v. West Virginia, 129 U. S. 122.   Such statutes violate neither the Federal nor State Constitution, which declare that "no person shall be deprived of life, liberty or property without due process of law."   State v. Havorka, 110 N. W. (Minn.) 870; Reetz v. Michigan, 188 U. S. 505; State ex rel. v. Purl, 228 Mo. 25.   (5)   Whether a medical college be reputable or in good standing is not a legal question, but a question of fact, and is left to the judgment and discretion of the State Board of Health, since the statutes do not define a reputable medical school.   30 Cyc. 1551; State v. Chittenden, 127 Wis. 468; State v. Chittenden, 112 Wis. 569; State v. Lutz, 136 Mo. 633; Illinois State Bd. Health v. People, 102 Ill. App. 614; Illinois State Bd. Dental Examiners v. People, 123 Ill. 245; People v. Illinois State Bd. Dental Examiners, 110 Ill. 184.   Our statutes do not define or prescribe the method by which the board shall proceed to determine the reputability of a medical college.   The board may, therefore, perform its duty in that regard in any reasonable way it may deem proper.   30 Cyc. 1552; State v. Chittenden, 112

Wis. 569. The decision of the board in this regard cannot be coerced or reversed by the courts, in the absence of arbitrary or oppressive conduct on the part of the board. 30 Cyc. 1552; Williams v. State Bd. Dental Examiners, 93 Tenn. 628; Hathaway v. State Board, 15 S. W. 322; State v. Gregory, 83 Mo. 1. c. 137; Illinois State Bd. Dental Examiners v. People, 20 Ill. App. 457. The board may adjudicate the status of a medical college as to reputability either on its own motion or on petition of the college. State v. Chittenden, 127 Wis. 504; Abbott v. Adcock, 225 Mo. 359. All questions in regard thereto may be considered at rest till, by lapse of time or otherwise, some reasonable ground exists for believing that its character may probably have changed. State v. Chittenden, 112 Wis. 577. (6) The burden rests on the college to establish its reputability. State v. Chittenden, 112 Wis. 569; State ex rel. Crites v. Clark, 230 S. W. 610; Abbott v. Adcock, 225 Mo. 360; Nelson v. State Bd. of Health, 108 Ky. 769. (7) The presumption of law is that the State Board of Health and the Circuit Court of Jackson County acted legally and fairly and entirely within the statutes in passing upon the evidence presented to them. Gass v. Evans, 244 Mo. 344; State ex rel. Murphy v. Burney, 269 Mo. 611; State v. Clark, 232 S. W. 103. (8) The evidence amply sustains the finding of the trial court and this court will not interfere with its judgment. State ex rel. Hurwitz v. North, 264 S. W. 682; State v. Clark, 230 S. W. 611; State ex rel. Johnson v. Clark, 232 S. W. 1034.

WALKER, J.—This is a proceeding in *certiorari* brought by the relator, who is the appellant here, in the Circuit Court of Jackson County, to compel the State Board of Health to send up its record to the circuit court relating to its inspection and finding of the State Board concerning the reputability of the relator as a college of physicians and surgeons under the laws of Missouri. The writ was granted and in obedience to the order therefor the respondent, the State Board of Health, made a return thereto embracing the minutes of the meetings of the board and the report of its committee concerning the inspection and survey of the relator.

The circuit court, upon a hearing, made an order adjudging that the Kansas City University of Physicians and Surgeons was not a reputable medical school within the meaning of the laws of this State. From this judgment the medical school has appealed to this court.

It appears that the Kansas City University of Physicians and Surgeons was organized in 1917 for the purpose of operating a medical school. Occupying the same building with what is designated as the Central College of Osteopathy, it was for a time operated in conjunction with the latter. Subsequently the School of Osteopathy trans-

ferred its equipment to the medical school, but both schools continued to use the same building, which, with the equipment, is shown to be owned by Dr. A. L. McKenzie, who is designated as the president of the medical school.

The testimony on behalf of the relator is largely devoted to evidence, principally by the president of the medical college, as to the qualifications of the persons named in the record as members of the faculty. This is followed by a statement that a four years' course is required and the character of same is given; the courses pursued and the manner of instruction in the various subjects is given. To this is added a statement of the daily requirements as to the attendance of the members of the different classes and the course necessary to be pursued by them to authorize their graduation.

The president of the State Board of Health and other members of same who had made an inspection of the medical college in October, 1923, about a month before this suit was brought, testified that its equipment was of a type in use twenty-five years ago; that the records showing the preliminary requirements of students and of the scholastic standing were meagre and incomplete; that advance standing was given to graduates of veterinary schools; that instruction was given to osteopathic and medical students at the same time and by the same instructors; that the required two years' instruction in reputable medical schools was attempted to be given in this school in one year; that the laboratory instruction given was by undergraduates with limited information of the subject; that a number of the instructors were carrying, at the time of their instruction, courses of study in the medical college; that some of them were teaching in night schools; that there were no patients in the hospital of the school, and that a bulletin board was kept directing the students to go out and get patients; that what was termed the hospital looked more, on account of the trunks and wearing apparel therein, like a dormitory or lodging house than a hospital; that the equipment, such as operating tables and instruments, were of antiquated patterns and showed no signs of recent usage; nor was there a clinic in connection with the school. The manner in which the inspection of the college was made by the members of the State Board of Health, which resulted in eliciting the foregoing facts, was as follows: They began at the front door and went through each room of the college, making notes as they proceeded, of the conditions shown. In addition to the foregoing summary of their inspection they found no equipment for the teaching of surgery by the performance of surgical operations or the treatment of surgical conditions. They went into the room where dissection was supposed to be taught and found no cadavers, nor any evidence of any having been there. The entire equipment of the dissecting room consisted of two tables, two chairs and an empty zinc-lined tank, capable of holding two or three bodies.

An inspection of the college's books showed that no verified record was kept of the preliminary educational requirements of the students. The excuse for this failure, as stated by the president, McKenzie, was that schools to which they had written for the required information would not reply to their inquiries. It was also shown that immediately prior to the coming of the State Board of Health to make the inspection, a cleanup campaign was inaugurated by the students in anticipation of the visit of the Board. The furniture and glassware was dusted and the cigarette stubs, matches and other evidences of disorder were removed. In order to make it appear that there were patients in the clinic one man had his wife and a negro woman and her little child stay in the waiting room nearly all of one afternoon, and each student made an effort to have a visitor on the day the Board began its examination. That the so-called hospital was used as a sleeping apartment by students.

I. The statute under which this action was brought is, in effect, as follows:

"The question as to whether any medical school is one entitled to recognition by the State Board of Medical Examiners, as a medical school of good standing . . . is hereby declared to be a question of fact and any person aggrieved by reason of the action of the Board, shall have the right to have such question reviewed by suing out a writ of *certiorari* in the circuit court and such question shall be tried *de novo* by the court issuing such writ, and the court of review shall render such judgment as should have been rendered in the first instance." [Sec. 7332a, Laws 1921, p. 473.]

The statute does not define a reputable medical school, except incidentally, in providing that an applicant for a license to practice medicine shall furnish the State Board of Health with satisfactory evidence of having secured a diploma from some reputable medical college of four years' requirements, including two years' experience in operative and hospital work at the time of graduation. [Sec. 7332, Laws 1923, p. 254.] The reputability therefore of a medical school, aside from the foregoing statute, is one of fact, and is left to the judgment of the State Board of Health, subject to a review by the courts. The authority of the board to determine in each given case the repute of medical colleges was declared in State ex rel. Abbott v. Adcock, 225 Mo. 1. c. 360, in which it was held that the statute concerning the granting of licenses to practice medicine, left it to the State Board of Health to pass upon "the reputableness of all medical colleges."

II. The medical college whose good repute within the meaning of the law is here under review is not an unfamiliar entity in our rec-

ords.    In State ex rel. Crites v. Clark, 230 S. W. (Mo.) 609, one Crites, a graduate of the college, sought by mandamus to compel the State Board of Health to grant him a license **Former Inspection.** to practice medicine. The board denied his application on the ground that his *alma mater* was not "a reputable medical school of four years' requirements." The circuit court sustained the finding of the board, and upon appeal to this court its judgment was affirmed. The vital question in that case, as in this, was the good repute of the college. Proof of that fact was essential to the relator Crites' right to the writ. In discussing the absence of this proof this court said: "There were two or three attempts made by the Kansas City University of Physicians and Surgeons to have the State Board of Health recognize it as an accredited school, and the board did make some two or three examinations of the school, its workings and equipment. The result of these several examinations was that each time the State Board refused to recognize the school." This was in 1921, but despite this ruling, based upon numerous inspections, which notified the college of its lack of standing and the necessity of its putting its house in order, not only to promote its own efficiency but to comply with the law, we find it in practically the same condition two years later. A comparison of the records of the former inspections of this college by the board with that upon which its action at bar is based shows no material improvement in any of its departments, the proper conduct of which are held necessary to the preparation of students for the practice of medicine and surgery. Proof of former conditions of inefficiency in the absence of evidence to the contrary, is, it is true, but persuasive of the continuance of such conditions. When, however, such proof is supplemented by evidence of a present similar inefficient condition in the conduct and management of the college, such proof not only justifies the conclusion that such conditions have not only been continuous, but that those who are conducting the college are willfully disinclined or unable to comply with the requirements of the State Board of Health in the lawful exercise of its power.

III. Legislative enactments conferring powers upon the Board of Health have, here and elsewhere, been given a liberal construction. The very nature of these enactments and the purpose they are intended to subserve furnish not only an explanation for the manner of their interpretation but the reason for same. While judges are declared to be conservators of the peace, a state board of health may justly be held to be a conservator of the public health. In recognition of this fact the courts have declared that every intendment should be allowed in favor of the validity of their actions. [People v. Raport, 193 App. Div. (N. Y.) 135; Kirk v. Board of Health, 83 S. C. l. c. 380; 29 C. J. 243, sec. 8, and notes.]

In recognition of the liberal manner in which laws concerning boards of health are to be construed we held in the Crites case, supra, that the State Board of Health may exercise its reasonable discretion in determining the reputability of a medical college of four years' requirements, under Section 7332, Revised Statutes 1919 (as amended, Laws 1923, p. 254.) .

The limit of the exercise of the board's power must always be within reason. Neither the actions of a board of this character, nor of any other for that matter, charged with the performance of a public duty will be upheld if arbitrary, unfair or violative of any right to which a person, natural or artificial, is entitled to under the law. If a board's acts are reasonable, however, and thus clearly within the purview of its powers they are entitled to and will receive judicial sanction. [State ex rel. v. Chittenden, 112 Wis. 569; Williams v. State Board, 93 Tenn. l. c. 628.]

We do not feel constrained, in view of the facts in this case, to seriously consider the technical procedural errors complained of by the appellant. Error, to merit consideration, should be such as to work injury to the complainant. The facts do not sustain such a contention. The parties who have been conducting this college have done so with a knowledge of the fact that they were violating the law. This truth is attested by the repeated inspections and adverse rulings of the Board of Health and the failure of the college or its managers to conform to the board's rulings which were well within the law.

The rules of the State Board of Health in force at the time the medical college under review was held not to be reputable are the same as those in force at the time the Adcock case and subsequently the Crites case was decided. In those cases we held the rules to be reasonable. A like ruling must therefore, in reason, be made in regard to the present rules. The reasonableness of the rules, the absence of any evidence of arbitrary action in their enforcement and the ample proof adduced of the lack in many respects of the college to comply with the requirements of the board under the law, authorizes an affirmance of the judgment.

It is so ordered. All concur; *Graves J.*, in the result; *Gantt, J.*, not sitting.