**STATE of Missouri, Plaintiff–Respondent,**

v.

**Herbert ARMSTRONG, Jr., Defendant–Principal,**

and

**Calvin Mercer, Surety, Defendant–Appellant.**

No. 41308.

Missouri Court of Appeals, Eastern District, Division One.

Sept. 2, 1980.

See also, Mo.App., 575 S.W.2d 847.

Robert J. O'Hanlon, Lee, O'Hanlon & Brady, St. Louis, for defendant–appellant.

George A. Peach, Circuit Atty. of City of St. Louis, Mark A. Brown, Asst. Circuit Atty., St. Louis, for plaintiff–respondent.

SNYDER, Judge.

This is an appeal from a judgment of the Circuit Court of the City of St. Louis declaring forfeiture of a $20,000 bail bond, executed by Herbert Armstrong, defendant–principal, and Calvin Mercer, surety, defendant–appellant.

Appellant raises five grounds for reversal, contending that the circuit court erred in: (1) allowing a collateral attack on a prior order of another division of the circuit court which discharged appellant as surety without costs; (2) allowing the state's motion for judgment on bond forfeiture to be heard when the court was without jurisdiction because a decision and mandate of the court of appeals had not been filed with the circuit court; (3) entering judgment in the full amount of the bond when the defendant–principal had been surrendered in open court prior to entry of judgment; (4) admitting in evidence state's Exhibit No. 1, the original of the bail bond, because the exhibit had not been qualified for admission under the Uniform Business Records as Evidence Law, §§ 490.660 et seq., RSMo 1978; and (5) denying appellant a fair hearing because the trial judge did not act as a neutral arbiter. These points are ruled against appellant and the judgment of the circuit court is affirmed.

Defendant–principal, Herbert Armstrong, Jr. was charged with robbery in the first degree, armed criminal action, and assault with intent to kill. On April 12, 1977, in the Magistrate Court of the City of St. Louis, Division 8, a $20,000 bail bond was filed to secure defendant's appearance on these charges. The surety was Calvin Mercer.

A forfeiture on this bond was declared June 1, 1977 and set aside the same day. A second forfeiture was declared September 27, 1977 and set aside November 14, 1977. A third forfeiture was declared November 28, 1977 when defendant failed to appear in Division 16 of the Circuit Court of the City of St. Louis. On January 16, 1978, the state filed a motion for judgment of default on the bail bond and on March 27, 1978, the Honorable Charles D. Kitchin, Judge, entered judgment for the state in the amount of $20,000 plus costs. Notice of appeal was filed with the Missouri Court of Appeals on March 28, 1978, and on December 19, 1978, the circuit court judgment was reversed and the cause remanded for a new trial. *State v. Armstrong*, 575 S.W.2d 847 (Mo. App.1978).

On March 3, 1978, while the state's motion for judgment on forfeiture was pending in the circuit court, the St. Louis Police Department received notification from the National Crime Information Center that the defendant was confined in the Putnam Correctional Institution in Ettington, Georgia. Detective Patrick McCord of the St. Louis Police Department went to Georgia, took custody of defendant on August 3, 1978, transported him back to St. Louis and delivered him to the sheriff on August 9, 1978.

On August 9, 1978, Judge Michael Hart of the Circuit Court of the City of St. Louis signed an order quashing the November 28, 1977 capias warrant issued for Armstrong. On October 30, 1978, the following order was entered by Judge Hart:

"Defendant delivered and surrendered in person in open court and remanded to custody of Sheriff of City of St. Louis. Public Defender is appoint (sic) as attorney for Defendant.

Surety released without costs.

SO ORDERED:"

On December 20, 1978, the day after the Missouri Court of Appeals reversed and remanded the cause, *State v. Armstrong, supra*, Judge Kitchin entered the following order:

"Pursuant to the Mandate of the Missouri Court of Appeals, St. Louis District the judgment of March 27, 1978 is hereby set aside, Cause reinstated on hearing docket and is hereby set for hearing Friday, January 26, 1979 at 10:30 a. m. in Division No. 20 of the Circuit Court of the City of St. Louis. The Clerk is to notify the surety and the defendant of the date and time of such hearing via registered mail. The Clerk of the Circuit Court for Criminal Causes is to have the original of the bail bond placed in the Court file for the aforesaid hearing.

So Ordered:"

The mandate of the court of appeals was dated December 19, 1978, but it was not signed by the clerk until January 26, 1979. At the hearing before Judge Kitchin, judgment was entered for the state. On Monday, January 29, 1979, a minute entry was made in the circuit court file reflecting that the mandate of the court of appeals had been filed. On February 5, 1979, the notice of appeal to this court was filed.

■ Appellant's first point concerns the jurisdiction of the circuit court and the procedures available to attack void judgments. The division of the circuit court to which a cause has been assigned is exclusive in its jurisdiction. When a case has been assigned and is pending in one division, no other division may take jurisdiction. *Allen v. Bagley*, 234 Mo.App. 891, 133 S.W.2d 1027, 1030[14] (1939); *Case v. Smith*, 215 Mo.App. 621, 257 S.W. 148, 150[5, 6] (1923); *Fenn v. Reber*, 153 Mo.App. 219, 132 S.W. 627 (1910). When the state filed its motion for judgment of default on January 16, 1978, jurisdiction vested in the circuit court as a whole, Division 20, Judge Kitchin presiding, taking exclusive jurisdiction of the case vis–a–vis the other divisions of the circuit court. Subsequently, final judgment

was entered and a notice of appeal was filed on March 28, 1978. When the appellant filed the notice of appeal and deposited the docket fee with the clerk of the circuit court, the circuit court generally, as well as Division 20 specifically, lost jurisdiction of the cause insofar as the exercise of any judicial function was concerned. *Brock v. Steward*, 519 S.W.2d 365, 367[1] (Mo.App. 1975); *Herrick Motor Co. v. Fischer Oldsmobile Co.*, 421 S.W.2d 58, 62[1, 2] (Mo.App. 1967). As long as the case was pending before the Missouri Court of Appeals, jurisdiction as to that case was solely in that court and no division of the circuit court had jurisdiction. The release of the surety without costs by Judge Hart was clearly a judicial act for which the circuit court lacked jurisdiction because on August 9, 1978, the date of Judge Hart's order, an appeal had been taken and jurisdiction then was lodged only in the court of appeals. Appellant contends that even if Judge Hart lacked jurisdiction to release the surety, his order must be attacked by direct appeal, writ of prohibition or by a motion to set aside brought before Judge Hart.

"The failure to distinguish between 'the erroneous exercise of jurisdiction' and 'the want of jurisdiction' is a fruitful source of confusion and errancy of decision. In the first case the errors of the trial court can only be corrected by appeal or writ of error. In the last case its judgments are void, and *may be assailed by indirect as well as direct attack.* [Emphasis added]."

*Rivard v. Missouri Pacific Railway Co.*, 257 Mo. 135, 165 S.W. 763, 770 (1914). No division of the circuit court had jurisdiction to act judicially while the cause was pending before the Missouri Court of Appeals. Where judicial tribunals have no jurisdiction to act, their proceedings are absolutely void. *Lafayette Federal Savings & Loan Association of Greater St. Louis v. Koontz*, 516 S.W.2d 502, 504[1–3] (Mo.App.1974); *Randles v. Schaffner*, 485 S.W.2d 1, 2[3, 4] (Mo.1972).

■ In *Brock v. Steward, supra*, the court found an amendment to an original

order written by the trial court after the notice of appeal was filed was "null and void." The order releasing the surety after jurisdiction lodged in the Missouri Court of Appeals was likewise null and void, and as a void, not merely voidable, judgment, subject to collateral attack by a coordinate court.

■ Appellant next contends that on Friday, January 26, 1979, jurisdiction had not reattached to the circuit court because the mandate of the Missouri Court of Appeals was not entered by the clerk of the circuit court until the following Monday, January 29, 1979. Clearly, when notice of appeal is filed, the trial court loses jurisdiction of the case and may only exercise functions of a purely ministerial or executive function. *Brock v. Steward, supra.* The circuit court may act judicially only after the appeals court rules and returns the case. Appellant relies solely on *Dalton v. Johnson*, 341 S.W.2d 596 (Mo.App.1960) as conclusive on the issue of the precise moment jurisdiction reattaches in the circuit court. This reliance is misplaced. *Dalton*, at page 598, quotes with approval from *State ex rel. McGrew Coal Co. v. Ragland*, 339 Mo. 452, 97 S.W.2d 113, 115[2–4] (banc 1936): "'No proceeding can be had in the lower court until the mandate has been filed in such court, or at least issued * * *.'" *Dalton*, at page 597, also quotes from 5B C.J.S. Appeal and Error § 1958, page 529: "'[E]xcept as the mandate itself may otherwise provide or require, *on its issuance* or filing in the lower court, that court is reinvested with jurisdiction. [Emphasis added].'"

■ The Missourri Court of Appeals issued its opinion in *State v. Armstrong, supra*, on December 19, 1978. On December 20, 1978 Judge Kitchin entered an order referring to the remanding of the cause and set the case for hearing January 26, 1979. On January 26, 1979, the mandate of the court of appeals was issued. At that hearing, Judge Kitchin had in his possession the mandate of the court of appeals. Admittedly there was a minor clerical irregularity in the proceeding. Normally the circuit

court does not hold a hearing on a case that has been remanded until the mandate has been formally filed. However, this ministerial function is not determinative as to the power of the court to hear a case; the issuance of the mandate revests jurisdiction in the circuit court.

■ Furthermore, appellant fails to advance any claim that prejudice to the appellant resulted from the irregularity. If there is no actual harm, there can be no relief. *State v. Hammond*, 426 S.W.2d 84, 86[1, 2] (Mo.1968). The surety had approximately one month's notice of the hearing; the surety is not contending that there was insufficient opportunity to prepare his case or that he was not afforded an opportunity to be heard. Nowhere in appellant's brief is there any showing of injury to the surety because of the alleged procedural irregularity. Nor can the court on its own examination of the record discover such injury. "Error, to merit consideration, should be such as to work injury to the complainant." *State ex rel. Kansas City University of Physicians & Surgeons v. North*, 316 Mo. 1050, 294 S.W. 1012, 1014[4] (banc 1927). To find otherwise would require this court to overrule not only the Missouri Supreme Court but also Missouri statutory law. Section 512.160.2, RSMo 1978 states: "No appellate court shall reverse any judgment, unless it believes that error was committed by the trial court against the appellant, and materially affecting the merits of the action."

■ Appellant's third point is that the court was required to release the surety from liability on the bond since the defendant–principal was surrendered in open court prior to the entry of judgment. In *State v. Wynne*, 356 Mo. 1095, 204 S.W.2d 927 (1947), the supreme court interpreted §§ 3970 and 3973, RSMo 1939 (now numbered §§ 544.610 and 544.640, RSMo 1978) to mean that if the accused voluntarily surrenders or is produced by the surety before final judgment on the recognizance, the surety, as of right, must be released on payment of the costs. If the accused is not produced, or is produced by peace officers

and not by the surety, the court may for cause remit the penalty upon payment of the costs. The court interpreted § 544.640, RSMo 1978[1] to mean that the arrest of the accused by peace officers after forfeiture and before final judgment did not entitle the sureties to relief as a matter of right. Good cause still had to be shown.

Appellant relies on *State v. Street*, 510 S.W.2d 225 (Mo.App.1974) which followed *State v. Wynne, supra*, in holding that a surrender of the defendant by the surety in open court mandates the release of the surety. However, in *Street* the surety had obtained custody of the defendant–principal before surrendering him to the sheriff. *State v. Argonaut Insurance Co.*, 541 S.W.2d 720 (Mo.App.1976), is closer to the facts here. In that case, custody of the defendant–principal had been obtained by the St. Louis police, not the surety. The surety then obtained a copy of the appearance bond and surrendered the defendant on his bond. The court ruled that the surety was not entitled to complete exoneration upon surrender of the defendant in open court because it had defaulted in its obligation to produce the defendant.

Like *Argonaut* then, the facts of this case fall into that class of circumstances over which the court can exercise its discretion as to the liability of the surety. The court may require a complete forfeiture of the bond or, only on a showing of good cause, remit the penalty in whole or in part, upon payment of all costs occasioned by the forfeiture.

■ Appellant argues that the court abused its discretion by entering forfeiture in the full amount of the bond because the defendant–principal was in custody at the time of the hearing and the state had suffered no prejudice by his failure to appear. The court is not persuaded that this reasoning suffices for the good cause that the surety must show in order for the court to remit part or all of the bond penalty. It is true that the purpose of bail forfeiture is not to enrich the coffers of the state. It is equally true that liability is placed upon the surety to provide an incentive to sureties to keep the principal within the jurisdiction of the court.

"If sureties, who have it in their power to insure compliance by a defendant, may be relieved because they make a diligent effort for his arrest as a fugitive there exists little inducement for diligence on their part in the first instance to prevent his escape. To exonerate sureties for such reason would seriously impede the declared public policy of the State for the prevention and punishment of crime."

*State v. Hinojosa*, 364 Mo. 1039, 271 S.W.2d 522, 524[2–4] (1954). This underlying principle, that sureties are obligated to keep defendant within the jurisdiction of the court, explains the strictness with which courts traditionally review a surety's claim of good cause justifying a remittitur.

In *Hinojosa*, although the surety testified he had spent ten days in Mexico looking for the defendant, the surety was not excused. In *State v. Hammond, supra*, the surety had sent two detainer warrants to the Oklahoma authorities; again, the surety was not excused. In *State v. Foster*, 512 S.W.2d 448 (Mo.App.1974) the surety was released: the surety had, himself, located the defendant, had a detainer placed on him, had advised the authorities of the defendant's location, and had the defendant file a request for disposition of charges against him which serves as a waiver of extradition.

Where is appellant's showing of comparable diligence? Neither the surety nor the surety's agent was called to testify as to what they had done to secure the return of the principal. There was no showing of

1. Section 544.640 reads:

"If, without sufficient cause or excuse, the defendant fails to appear for trial or judgment, or upon any other occasion when his presence in court may be lawfully required, according to the condition of his recognizance, the court must direct the fact to be entered upon its minutes, and thereupon the recognizance is forfeited, and the same shall be proceeded upon by scire facias to final judgment and execution thereon, although the defendant may be afterward arrested on the original charge, unless remitted by the court for cause shown."

even the most preliminary efforts to locate the defendant and inform the authorities of his whereabouts. Officer McCord testified that it was the National Crime Information Center that informed the authorities that Armstrong was imprisoned in Georgia. There was no evidence in the record to support appellant's contention that bona fide efforts were made to return Armstrong. The surety was not entitled by right to exoneration when custody of the defendant was not accomplished by the surety. The trial court had discretion to remit the bond in whole or in part only upon a showing of good cause. The discretion was not abused.

■ Appellant in his fourth point contends that the state's Exhibit No. 1, the original bail bond, should not have been admitted into evidence because the trial court could not take judicial notice that the exhibit was the original bond and because the bond was not admissible as a business record under § 490.680, RSMo 1969. There is no need to speak to the admissibility of the bond as a business record. This point is ruled adversely to appellant because the trial court here could properly take judicial notice of the bail bond.

■ A court can judicially notice its own records. *Arata v. Monsanto Chemical Co.,* 351 S.W.2d 717, 721[5] (Mo.1961). *Knorp v. Thompson,* 352 Mo. 44, 175 S.W.2d 889, 894[4] (Mo.1943). *Mince v. Mince,* 481 S.W.2d 610, 614[9–14] (Mo.App.1972).

Under Rule 32.09 then in effect (now Rule 33.11) the clerk of the Circuit Court for Criminal Causes was required to file defendant Armstrong's bond. The original bail bond as filed was identified at the hearing by the deputy clerk of the circuit court in charge of bonds, after the trial judge had ordered the bond to be placed in the court file in preparation for the hearing. No evidence was adduced to challenge its authenticity. Judge Kitchin examined the bond, took judicial notice that it was the original bond and received it in evidence. It was properly admitted.

■ Appellant's final point of error charges the trial judge did not act as a neutral arbiter. A thorough examination of the transcript discloses no evidence that the trial judge was partial. It is true there were what seemed from the reading of the transcript to be heated exchanges between the court and counsel, usually initiated by counsel, but the trial judge at all times exercised patience and judicial restraint in his comments and rulings. His discussion of the facts and law of the case were carried on for the purpose of analyzing the law and arriving at a fair decision based on sound legal principles. This point is ruled against appellant.

The judgment is affirmed.

STEWART, P. J., and WEIER, J., concur.