## In re CANNON'S GUARDIANSHIP.

No. 27853.    March 1, 1938.

W. J. Mahan and McCoy, Craig & Pearson, for plaintiff in error.

Neal E. McNeill, for defendant in error.

BAYLESS, V. C. J. Jasper T. Krow applied to the county court of Osage county, Okla., for an order nunc pro tunc in the matter of the guardianship of Alex Cannon, an incompetent, for the purpose of supplying and completing the records of said court in said guardianship proceedings to show that said Krow had theretofore been released as a surety upon the bond of the guardian. The application was granted and an appeal was taken to the district court of Osage county, Okla. Upon trial de novo in the district court, a like order nunc pro tunc was made. This appeal was taken.

Several contentions are made, one relating to the sufficiency of the evidence and others to points of law. It is asserted the evidence is insufficient to justify the making of the order. The legal points may be grouped under the general allegation of a lack of jurisdiction on the part of the county court to make the order of release in the first instance, which necessarily carries with it a like argument concerning the jurisdiction to enter the order nunc pro tunc. We will consider the question of the sufficiency of the evidence first.

In 1919, J. O. Cales, guardian of said incompetent, filed a bond for the penal sum of $15.000, as such guardian, with Krow and others as sureties. Early in 1923, because of a controversy between the Super-

intendent of the Osage Agency and certain guardians, among whom was Cales, the said superintendent addressed a letter to Krow and his fellow sureties advising them either that they had been sued or would be sued along with Cales to settle the controversy. They met a fellow townsman, who had received a similar letter relating to a bond on which he was surety, and upon consultation they decided to go to Pawhuska to investigate the matter. At Pawhuska they consulted with a friend, and he advised them to go to the Osage Agency and give notice of their withdrawal as sureties on said bonds. We only mention this other surety as corroboration of Krow as to what happened to him—otherwise, it has no part in this cause. At the Osage Agency they were advised to take the matter up with the county judge. They went to the county judge's office and discussed the matter with him. These three sureties and the county judge testified to virtually the same facts, and we will point out wherein they differ. The sureties advised him they wished to be released. The county judge advised them this would be agreeable, as he desired that the guardians furnish bonds with corporate surety in all cases. They testify that the county judge thereupon had prepared an application, on their behalf, for release, and Krow signed it, and left it with the county judge. The county judge says he prepared no application, but did dictate a minute to his clerk, to be entered in the records, directing Cales to file a new bond, and that, upon the filing and approval of such bond, Krow be released from future liability. He likewise dictated a letter to Cales to order a new bond. The exact date of this is not shown, but one of the witnesses places it as after the death of his father, which occurred in March, 1923. June 20, 1923, Cales filed a bond for $10,000 with corporate surety, and said bond recites:

"The condition of the above obligation is such, that where as by order of the county court of Osage county, state of Oklahoma, made and entered on the 6th day of June, A. D. 1923, the above-named principal was appointed guardian of the person and estate of the above named * * * directed to execute an additional bond. * * *"

It is proper to say at this point that at the time of the filing of the application for order nunc pro tunc, the records in the guardianship proceedings were absolutely bare of any evidence or suggestion of an application for release or order directing new bond and releasing sureties. April 21, 1936, Krow applied for an order nunc pro tunc to establish and complete the record.

We are of the opinion that the evidence is sufficient to justify the county court in the first instance, and the district court on appeal, entering the order nunc pro tunc. We hold that the opinion in the case of Courtney v. Barnett, 65 Okla. 189, 166 P. 207, controls in this case. It is seldom that two cases are found wherein the facts are so similar. In the Courtney v. Barnett Case the sureties applied to the county judge for release from a guardian's bond, and the county judge ordered the guardian to post a new bond, and directed the release of the sureties from future liability upon the filing and approval of said bond. Six years later they were sued upon the bond for a shortage which occurred wholly after the date of their release. They then applied for and procured the entry of an order evidencing what had been done at the time of their application. The discussion of the law applicable to orders nunc pro tunc found therein, and in the case of In re Peter's Estate, 175 Okla. 90, 51 P.2d 272, covers this case. We hold the evidence is sufficient to justify the entry of an order nunc pro tunc evidencing what occurred at a date early in 1923, prior to June 20th. No issues relating to the validity of their application to be released were raised.

Orders nunc pro tunc, when made, are judgments and are to be treated as such, as though the entry had been made at the time. As said in 34 C. J. 82, sec. 222, note 14:

"A nunc pro tunc entry of record is competent evidence of the facts which it recites, it is conclusive upon any other court in which the record is offered in evidence, and it cannot be impeached collaterally."

The same rule is stated in 15 R. C. L. 627, sec. 70, as follows:

"As a general rule a judgment entered nunc pro tunc must be respected and enforced in the same manner and to the same extent as if entered at the proper time. The date of the entry is by fiction of law made and considered to be the true date of the judgment for the purpose of binding the defendant by the obligation of the judgment. As between the original parties therefore the entry is retrospective, and has the same force and effect as if entered at the time the judgment was rendered."

See Courtney v. Barnett, supra. Therefore, the entry which is to be made in this cause must be such as will truly reflect what was done (15 R. C. L. 623, sec. 64, note 1), and it must not be drawn to reflect something which did not occur, nor should it lead to unwarranted presumptions

to lend strength to it. This leads us to a discussion of the points of law.

It is urged that the county judge had no power or authority to make the order releasing the sureties at the time the entry nunc pro tunc declares that he did so order. It is urged first that no service of the application or other requisite papers or pleadings, nor of the notice or hearing, was had upon the Superintendent of the Osage Agency, as prescribed by Act of Congress, April 18, 1912, 37 St. 86. It is further urged that the power and authority of the county judge to so act was not invoked as prescribed by section 1437, O. S. 1931, 58 Okla. Stats. Ann., sec. 779, as construed in Aetna Acc. & Liab. Co. v. Langley, 68 Okla. 283, 174 P. 1046, and Title Guar. & Sur. Co. v. Foster, 84 Okla. 291, 203 P. 231.

The evidence is in conflict as to whether Krow applied orally only or signed the written application he says was prepared for him by the county judge. The trial courts did not find on this point, but simply said "upon application." No contention is made that any notice was required by the county judge, or given to anyone, of a hearing. As one of the witnesses stated, it did not last 30 minutes.

These are proper matters to present when the entry nunc pro tunc is offered as the basis for an asserted right or defense. We do not believe these are proper matters for consideration in this appeal. In our opinion, the sole issue in a proceeding for an entry nunc pro tunc is one of fact; that is, Did the court actually render a judgment on that date which does not show of record? The issues relating to whether he had jurisdiction of the subject matter, or of the parties, or to render the particular judgment, are beside the point. If he had no such jurisdiction, the defect would apply to the judgment if actually entered at the time, or if entered at any subsequent time. As was said in Eslow v. Albion Twp., 32 Mich. 193:

"It is not within the purview of an order nunc pro tunc to operate ex post facto to give force to a chamber order which was void for want of jurisdiction, or to give validity to proofs taken in a chancery cause without authority of law under such void order."

In that case an order directing the manner of taking evidence in a chancery suit was entered in chambers. On appeal this was held invalid. Thereafter, an order nunc pro tunc was entered attempting to enter a valid order directing ex post facto the manner of taking such evidence. There-

upon, the evidence was again offered as being valid under the order nunc pro tunc, and the above rule was announced. It is to be observed that this objection was not offered in the proceedings to obtain the order nunc pro tunc, but thereafter when the order was offered as the basis of a right. See, also, Ludlow's Heirs v. Johnston, 3 Ohio, 553, 17 Am. Dec. 609.

The case of Uland v. Carter et al., 34 Ind. 344, is a similar case. In that case a guardian came into the probate court five years afterwards, and asked for the entry nunc pro tunc to show that he had filed an additional bond as required by order of the court in connection with the sale of the ward's land. Upon the hearing, sufficient evidence in this respect was introduced, but the trial court said:

"Upon the foregoing facts, the court comes to the following conclusions of law: That the sale was illegal and void, for the reasons that no order was ever made by the court for the sale of said land, and that no notice was ever given of such sale as required by law in force at the time of such sale. The court therefore refuses to correct the record as required in the motion of the plaintiff, and finds for the defendant."

On appeal the Supreme Court of Indiana said:

"We think the judgment of the court ought to be reversed. The court had but one thing to do, either to direct the entry to be made, or to refuse it."

We believe that applies here.

Judgment affirmed.

OSBORN, C. J., and WELCH, CORN, and GIBSON, JJ., concur.