CLARENCE E. ALLEN AND CARRIE MAY ALLEN, RESPONDENTS, V. ELMER F. BAGLEY AND FARM & HOME SAVINGS & LOAN ASSOCIATION, APPELLANTS.—133 S. W. (2d) 1027.

Kansas City Court of Appeals.   October 30, 1939.

*Harris & Koontz* for appellant.

*Calvin & Kimbrell* for respondents.

894

BLAND, J.—This is an action for the conversion of two certificates of corporate stock issued by the defendant, Farm & Home Savings & Loan Association of Missouri. There was a verdict and judgment in favor of plaintiffs in the sum of $1685.78. The defendant, Farm & Home Savings & Loan Association of Missouri (hereinafter called the defendant) has appealed.

The facts show that the plaintiffs, husband and wife, were the owners of the certificates of stock in question; that the plaintiff, Carrie May Allen, went to the offices of the defendant, in Kansas City, and applied for a loan. She was informed there that the company could not make a loan on the certificates and she was referred to Mr. Boyer, in the offices of Elmer F. Bagley & Son. Thereafter, she called at the offices of the defendant, Bagley, and there on September 25th, 1933, she borrowed the sum of $350, giving her promissory note, due one year after date to "Elmer F. Bagley & Co."

It was stipulated between the parties at the trial that Bagley sold the certificates "sometime within 10 or 30 days after the date the loan was made. It is claimed by plaintiffs that Bagley had no authority to sell the certificates and was guilty of their conversion when he did so. On the back of each certificate appears an assignment to W. H. Fullerton, which assignments purport to be executed by the plaintiff, Carrie May Allen. However, she denied that she signed her name to the assignments and plaintiffs claimed at the trial that same were forgeries.

It was stipulated at the trial that defendant acquired the certificates, for value, on or about March 15, 1934; that their value at the

time of their sale by Bagley was $1685.78 and that was their value at the time of their acquisition by the defendant. The note recites that the market value of the certificates was $773.24; that that sum, with interest at the rate of 5% per annum, would be the limit of the liability of the payee.

Plaintiffs' evidence shows that neither one of them learned of the sale of the stock by Bagley until shortly before the note became due; that the amount due on the note was never tendered to Bagley but plaintiffs had made arrangements to get it; that Bagley told Mrs. Allen on several occasions that he would replace the certificates which he failed to do and that after several unsuccessful attempts to get Bagley to produce the certificates, plaintiffs filed this action.

It was stipulated at the trial that plaintiffs prior to filing this suit, made demand on defendant for the return to them of the certificates, which defendant refused. Defendant introduced no evidence except the testimony of an expert on questioned documents, who testified that the signature appearing in the assignments on the backs of the certificates was that of the plaintiff, Carrie May Allen, in his opinion.

The note provided that the payee was authorized at any time to transfer the securities to its own name or that of its nominee; that the payor agreed that if the payee should feel unsafe or insecure for any reason whatever, or feared diminution or depreciation in the value of the certificates, then it might either declare said note due or it might sell and transfer any and all of said securities and the payor would accept other securities of equal denomination in the same corporation, or in lieu of such securities the proceeds of their sale plus interest.

Defendant insists that its instruction in the nature of a demurrer to the evidence should have been given. In this connection defendant says that, by the terms of the note, Bagley had the right to sell and transfer the securities for any reason whatsoever. There is no merit in this contention. The fact that the payee was authorized, at any time, to transfer the securities to its own name or that of its nominee, did not give it the right to sell the certificates. [Commonwealth v. Althause, 207 Mass., 32.] Such provisions as those which appear in the note in question are to be strictly construed and a sale is not authorized except on the happening of the conditions specified. [49 C. J., p. 948; Commonwealth v. Althause, *supra*.]

"A pledgee cannot, unless authorized by the agreement, sell property pledged to him as a security for a debt, before the debt is due, or even then except after due notice to redeem and of the time and place of sale. A provision in a note secured by a pledge of collateral, giving the holder the right to make such use of the collateral as he may desire, subject only to the obligation to deliver to the pledgor collateral of the same amount and kind as that pledged, does

not give him the right to sell it, so as to end all right of the pledgor in it prior to default in payments on the note." [21 R. C. L., pp. 671, 672.] "One to whom collaterals have been pledged to secure a debt, with authority under certain circumstances to sell them before its maturity, must, before sale, give notice to the pledgor to redeem in case he elects to sell upon the happening of a contingency of which the pledgor may be in profound ignorance." [21 R. C. L., p 672.] [See, also, Cushing v. Building Ass'n. etc., 134 Pac. 324; Nat'l. Bank of Ill. v. Baker, 128 Ill. 533, 538, 539.] The rights under the pledge were not effected by an invalid sale by the pledgee. [49 C. J., p. 950.]

There is no evidence that the payee sold the securities under the provisions in the note, giving it authority to sell in case the payee felt unsafe or insecure, or feared diminution or depreciation in the value of the securities. If this was a defense, the burden was upon defendant to show it. There is no evidence that there was any notice to the plaintiffs, or either of them of such sale. The evidence is to the contrary. The sale undoubtedly was invalid.

However, defendant insists that its instruction in the nature of a demurrer to the evidence should have been given for the reason that one may not maintain an action in conversion unless he has possession or the right to immediate possession of the thing converted; that it was not until the note became due that plaintiffs were entitled to possession of the securities.

It is true that plaintiff must show possession or the right to possession of the property at the time of the conversion. [Sebastian County Coal & Mgn. Co. v. Fidelity Fuel Co., 310 Mo. 158; New First National Bank v. Rhodes Produce Co., 58 S. W. (2d) 742, 746; Abbot v. Miller, 226 Mo. App. 277.]

It is not true that it was not until the note became due that plaintiffs were entitled to the possession of the securities. When the pledgee makes an unauthorized disposition of the pledged property, conversion then takes place. [Creer v. Lafayette County Bank, 128 Mo. 559, 574; Richardson v. Ashby, 132 Mo. 238; Interurban Constr. Co. v. Hayes, 191 Mo. 248; Kegan v. Park Bank of St. Jos., 8 S. W. (2d) 858; Murray v. Farmers' and Merchants' Bank, 206 S. W. 577; Kansas City Casualty Co. v. Westport Avenue Bank, 191 Mo. App. 287.] The right of possession springs out of the conversion, itself. It is not necessary that that right should have existed one moment prior to the conversion. Right of possession is given by the very act of conversion. [Johnson v. Whittemore, 27 Mich. 462, 468, 469.]

It was not necessary for plaintiffs to have tendered the amount due on the note in order to maintain this suit. The Supreme Court in Kegan v. Park Bank of St. Joseph, *supra*, l. c. 872, stated: "We hold that when the pledgee has converted the collateral in such manner that it is impossible for him to return it, the pledgor need not tender

the debt secured and demand a return of the collateral before suing for conversion.''

''Any person who purchases the personal property of another from one other than the owner or some one authorized to sell the same is liable in trover for the conversion of the property at the suit of the true owner.'' [26 R. C. L., p. 1118.] [See, also, 65 C. J., p. 46; Interurban Constr. Co. v. Haynes, *supra.*] We think that the demurrer to the evidence was properly overruled.

Complaint is made of the giving of plaintiffs' Instruction No. One. This instruction directs a verdict for the plaintiffs if the jury found that the name of Carrie May Allen, purporting to appear on the back of the certificates in connection with the assignments thereof, was a forgery.

Defendant insists that the instruction is erroneous in that it did not require the jury to find that at the time of the alleged conversion plaintiffs had the right to the possession of the certificates. We think there is no merit in this contention. That right was shown by the undisputed testimony. There was no dispute at the trial that the plaintiffs were the owners of the certificates in question. The record substantially discloses, without room for controversy, that the plaintiffs were the owners of the certificates in question and that they were pledged to Bagley to secure the note in question, which was introduced in evidence. It was stipulated at the trial that the certificates were sold by Bagley within 10 or 18 days after they were pledged; that defendant purchased them on March 15, 1934, and demand had been made upon it for their return. Under such circumstances, there is no question, as we have before indicated, but that plaintiffs were entitled to the immediate possession of the certificates at the time of their sale by Bagley. There was nothing to submit to the jury on this issue. [Kesterson v. Hays, 209 S. W. 721 (Ark.); Fullan v. Cummings, 16 Vt. 697.]

We have examined the case of Sullivan v. Gault, 299 S. W. 1116, cited by defendants. The court in that case, however, said (l. c. 1117) that the question of possession in the plaintiff in the automobile at the time of its conversion ''was a disputed fact.'' As we have before stated, the question of the right of possession in this case was not a disputed fact.

However, it is claimed that the court tried this cause without jurisdiction to hear the same.

The abstract of the record filed here by defendant shows that the cause was assigned by the Assignment Division to Division No. Eight, but without any re-assignment of the cause, it was tried in Division No. One.

Under the record presented by the defendant, undoubtedly, there was no jurisdiction in Division No. One to try the cause. [Cole v. Norton, 251 S. W. 723.]

However, plaintiffs have filed here an additional abstract of the record showing that the Assignment Division corrected its records *nunc pro tunc* to show that the court actually assigned the case to Division No. One.

Defendant has filed an additional abstract of the record bringing up the evidence upon which the correction *nunc pro tunc* was made, claiming that the evidence is insufficient to support the correction. However, defendant did not appeal from the order correcting the record *nunc pro tunc*. Therefore, the order became final and is not open to collateral attack in this court. [Adamson v. Palmer, 293 S. W. 465.]

The judgment is affirmed. All concur.