SNODGRASS, APPELLANT, *v.* SNODGRASS, APPELLEE.

(No. 3889—Decided April 9, 1948.)

Mr. *Fred E. Renkert,* for appellant.
Mr. *Don Isham,* for appellee.

DOYLE, P. J. This was an action for a declaratory judgment, filed in the Court of Common Pleas of Summit County, which sought a declaration of the marital status of Gladys Louise Snodgrass, the defendant therein. The action was instituted by Georgia Snodgrass, who, as contingent beneficiary in a policy of National Service life insurance on the life of her son,

James L. Snodgrass, Jr., sought such declaration, to the end that the defendant be declared not the wife of the insured and therefore not entitled to take the proceeds of the policy as principal beneficiary.

The controlling facts before us in this appeal may be stated in chronological order as follows:

1. June 10, 1941. Gladys Louise Simovic (now Snodgrass) filed an action for divorce, alimony and custody of child against her husband, Andrew Simovic, in the Court of Common Pleas of Summit County.

2. June 10, 1941. Personal service of summons was made on the husband Simovic, and return made of the same.

3. June 23, 1941. Andrew Simovic appeared in court and was ordered by journal entry to pay alimony *pendente lite*.

4. September 15, 1941. The divorce action was tried by the court, and at the conclusion thereof the court orally pronounced a decree of divorce to the petitioning wife, ordered the husband to pay alimony, and awarded to the wife the custody of their child. There was made by the court the following notation on the envelope containing the papers in the case: "9/15/41. Case heard. See J. E." This notation was signed by the trial judge.

A journal entry, however, was not filed for record.

5. June 10, 1942. Gladys Louise Simovic married James L. Snodgrass, Jr., a soldier in the army, by formal ceremony in the state of Kentucky.

6. December 18, 1942. The divorce action, filed on June 10, 1941, and heard and orally decided on September 15, 1941, was dismissed by the court. The journal entry of dismissal stated that the case was dismissed under authority of Rule 13 (a) of the rules of the court. (Rule 13 [a] provided, *inter alia*, that the "decision" of the court may be "vacated and set

aside'' if counsel for the prevailing party has not presented to the judge a journal entry of the decree within the time therein specified.)

7. October 1, 1944. A National Service life insurance policy was issued upon the life of James L. Snodgrass, Jr., designating his wife, Gladys L. Snodgrass, as principal beneficiary, and Georgia Snodgrass, his mother, as contingent beneficiary.

8. November 6, 1945. James L. Snodgrass, Jr., died while a soldier in the army, and at a time when the policy was in full force and effect.

9. February 2, 1946. Gladys (Simovic) Snodgrass filed a motion in the same Court of Common Pleas which had previously heard, orally decided, and later dismissed, her case, in which she sought an order of the court for the reinstating of the case, ''and for permission to file a decree of divorce in accordance with the court's finding of September 15, 1941.'' In support thereof, she alleged that ''the court directed that defendant immediately pay the costs of the divorce action, and that she was under the impression the defendant had complied with said order but now finds that her decree of divorce was not filed, and that the matter inadvertently was dismissed by the court by reason of defendant's failure to pay the court costs.''

10. February 5, 1946. The court recorded a journal entry in the following terms: ''On motion of plaintiff *and for good cause shown*, the defendant having been notified by registered mail of the filing of said motion, the court finds that said motion is well taken and hereby orders that the journal entry dismissing said cause be vacated and that this cause be reinstated, and hereby grants the plaintiff permission to file her decree of divorce in accordance with the decision and finding of the court made September 15, 1941.'' (Italics ours.)

11. February 5, 1946. A short time subsequent to the filing of the above order for record, the court entered for record its judgment granting a divorce to the petitioner. It was ordered *nunc pro tunc*, or retroactive to the date of the original decision—to wit, September 15, 1941.

The Court of Common Pleas, pursuant to a trial in which the above facts were before it, denied the prayer of the petitioner (the mother), who sought a declaration (1) "That * * * Gladys Louise Snodgrass was without legal capacity to enter into marriage with James L. Snodgrass, Jr., on June 10, 1942"; (2) "That the pretended marriage between said parties was a nullity and void *ab initio* under the laws of Ohio"; (3) "That the defendant was at no time the lawful wife of James L. Snodgrass, Jr."; and (4) "That the judgment and order entered by this court on February 5, 1946, * * * reinstating said cause and granting a decree of divorce to the defendant herein, shall not operate so as to validate the pretended marriage between the defendant herein and James L. Snodgrass, Jr."

The appeal on questions of law, here under consideration, is from that judgment.

1. It is within the legitimate and familiar exercise of the power of the court to enter a judgment *nunc pro tunc*.

"2. The function of an entry *nunc pro tunc* is the correction of judicial records insofar as they fail to record, or improperly record, a judgment rendered by the court, as distinguished from the correction of an error in the judgment itself, or in the failure to render the judgment." *Caprita* v. *Caprita*, 145 Ohio St., 5, 60 N. E. (2d), 483, 158 A. L. R., 1201.

And see, *Herman* v. *Ohio Finance Co.*, 66 Ohio App., 164, 32 N. E. (2d), 28.

"One purpose of entering a judgment now for then is to supply a matter of evidence, and not to alter or create facts. If the court had failed to act, * * * the matter cannot be corrected by a judgment at a later term; but if it had acted, * * * but there was not made sufficiently formal evidence of the fact, the evidence may be made to conform to the truth as shown by record." *Hoffman* v. *Shuey*, 223 Ky., 70, 2 S. W. (2d), 1049, 58 A. L. R., 842.

A judgment which has been entered *nunc pro tunc* and is offered in evidence in another or different action is presumed to have been entered regularly and upon competent and sufficient evidence, and if the court had jurisdiction it cannot be *collaterally* impeached for insufficiency of the evidence or error in its finding. 1 Freeman on Judgments (5th Ed.), Section 139.

It was the view of the trial court that the decree *nunc pro tunc* was "a proper and final order," and for that reason the record was "unimpeachable by any collateral attack and * * * not subject to further review by means of any declaratory judgment or * * * other proceedings."

With this conclusion the majority of this court agrees, in so far as the parties to the action are concerned.

In the case of *Katanic* v. *Katanic*—No. 3864, Court of Appeals for Summit County (decided by the Court of Appeals of the First District on November 4, 1947, and unreported; motion to certify record overruled by the Supreme Court on March 3, 1948)—it was determined that, under facts similar to those here existing, the court, in the furtherance of justice, could treat the entry of dismissal as a nullity and void *ab initio,* and that inherent power reposed in the court to record an entry speaking the truth, effective as of the

time of the first pronouncement of the court's decision.

We determine that the divorce decree in the case under consideration cannot be collaterally attacked in this proceeding, and is binding on all persons except third persons who have acquired rights without notice of the rendition of the decision of the court, which rights are adversely affected by the decree subsequently entered for record, effective as of the time of the first pronouncement of the decision.

2. In a decree *nunc pro tunc,* "Generally, such conditions will be imposed as may seem necessary to save the interests of third parties, who have acted bona fide and without notice; but if such conditions are not expressed in the order of the court, they are, nevertheless, to be considered as made a part of it by force of the law. The public are not expected nor required to search in unusual places for evidences of judgments. They are bound to take notice of the regular records, but not of the existence and signification of memoranda made by the judge, and upon which the record may happen to be afterwards perfected. The expression so frequently made that a *nunc pro tunc* entry is not to affect the rights of third persons *must not be understood as signifying that effect must be denied to such an entry in all cases where third persons have acquired interests.* Courts in determining whether or not to amend or perfect their records are controlled by considerations of equity. If one not a party to the action has, when without notice of the rendition of the judgment or of facts from which such notice must be imputed to him, advanced or paid money or property, or in other words, has become a purchaser or encumbrancer in good faith and upon a valuable consideration, then the subsequent entry of such judgment *nunc pro tunc* will not be allowed to prejudice

him.  *Otherwise its effect against him is the same as if it had been entered* at the proper time.''  1 Freeman on Judgments (5th Ed.), Section 138, and cases cited.

And see, *Webb* v. *Western Reserve Bond & Share Co.*, 115 Ohio St., 247, and, at pp. 260-261, 153 N. E., 289, 48 A. L. R., 1176, comment on *Coe* v. *Erb*, 59 Ohio St., 259, 52 N. E., 640, 69 Am. St. Rep., 764.

Recognizing the text-book rule heretofore stated as sound in law, the question now arises whether the plaintiff in this action—a contingent beneficiary in a life insurance policy—comes within the class of persons who are entitled to protection against the retroactive effect of the decree *nunc pro tunc.*

It is argued that Gladys Louise Snodgrass, at the time of her marriage and at the date of maturity of the policy (death of the insured), was not the wife of the insured because she was a bigamist and that her marriage was void *ab initio.*  The law of Kentucky (where the marriage in question took place), as well as the law of Ohio, renders a marriage between two persons, one of whom has a husband or wife living at the time of the marriage, void.  Section 402.020, Kentucky Revised Statutes; Section 11181, General Code of Ohio.  (Federal law required the beneficiaries in policies of the kind under consideration to bear a certain relationship to the insured, such as wife, mother, etc.)

It was for the purpose of affording justice to individuals that the policy of entering judgments and decrees *nunc pro tunc* was commenced.  It has been exercised by courts of law and equity from the earliest times.  It need not be argued that a wise and just procedure has made it possible to legitimate a questionable marital status which innocently came into existence; that as between the parties to the relationship

and generally the world at large the order *nunc pro tunc* has legitimated from the beginning the status which the parties desired and thought they had.

The mother now claims as an innocent third party whose rights vested in the policy at the time of the death of her son. She claims as a contingent beneficiary because there was no "wife" to take. Certainly she paid neither money nor property for her contingent interest. She has not been injured or damaged as those terms are used in law, because her only position under any circumstance was that of a possible gratuitous beneficiary. If it be assumed that, under a strict interpretation of the law and the provision of the insurance policy, she should be given the proceeds of the policy because of the vesting of a right to such proceeds at the time of the death of her son prior to the entry of judgment *nunc pro tunc*, nevertheless a court of equity, if called upon later to declare a constructive trust for the benefit of the wife on the theory of unjust enrichment, would seem to be entirely justified in so doing. It is the conclusion of the majority of this court that the law would not require such a circuitous procedure in seeking justice.

Gladys Louise Snodgrass was the person intended by the now-dead soldier to receive primarily the benefits of his insurance policy. The law has permitted this intent to be fulfilled by an entry *nunc pro tunc*, "for good cause shown" and in the interest of justice.

The Supreme Court of Iowa had before it in 1943 a case similar in many respects to the case now here for decision. A marriage took place in Iowa (1938) and several years later (May 8, 1941) the husband was killed in an accident arising out of and in the course of his employment. The wife filed with the Industrial Commissioner an application for arbitration against the employer and its insurance carrier. The mother

of the killed workman intervened and alleged that the applicant was not the deceased's surviving spouse and prayed that the workman's compensation be awarded to her. It was admitted that the death was compensable, and the only issue was between the mother and her who claimed as wife.

The material and undisputed facts were that the claiming wife had been previously married and domiciled in Ohio, where she in 1935 petitioned the Knox County Court of Common Pleas for divorce; after personal service of summons on her then husband, she was, after trial, granted a divorce in the same year; the decree was not journalized; on June 10, 1941, approximately a month after the death of the insured, a *nunc pro tunc* entry was approved by the Ohio judge and entered for record; it ordered that the divorce decree be retroactive to 1935, the date of the original pronouncement. Upon these facts the court held:

"13. Where Ohio divorce decree of one claiming compensation as wife of deceased employee from her first husband obtained prior to her marriage to deceased employee was invalid because decree was not journalized as required by statute, '*nunc pro tunc* entry' made by Ohio court after employee's death rendered divorce decree effective as of date decree should have been journalized and entitled claimant to compensation as employee's surviving spouse, as against contention that employee's mother, who was asserting right to compensation on ground that employee's wife was not legally married to employee, was an 'innocent third person without notice' who had acquired vested interests before *nunc pro tunc* entry was made which could not be affected by entry thereof." *Hobson* v. *Dempsey Const. Co.*, 232 Iowa, 1226, 7 N. W. (2d), 896.

In addition to what has been stated heretofore, ref-

erence is made to the following statute of Ohio (Section 11604, General Code):

"All judgments and orders must be entered on the journal of the court, and specify clearly the relief granted or order made in the action. The entry must be written into the journal as soon as the entry is filed with the clerk or directed by the court and shall be journalized as of the date of the filing of said entry or of the written direction by the court."

It is the conclusion of a majority of this court that the petitioner's interest does not come within the class of interests which may be asserted despite the retroactive order of the court, and that the trial court correctly held that the decree *nunc pro tunc* could not be collaterally attacked in this proceeding.

*Judgment affirmed.*

HURD, J. (of the Eighth Appellate District, sitting by designation in place of HUNSICKER, J.), concurs.

STEVENS, J., dissenting. I find myself unable to agree with the conclusion reached by my associates.

The facts as stated in the majority opinion are complete and accurate, except that Rule 13 (a) of the Court of Common Pleas of Summit County is not therein fully set forth. That rule provides:

"The journal entries of all orders, judgments and decrees shall be furnished by counsel for the prevailing party and must be presented to the judge making such order, judgment or decree for his approval within seven days after the decision is announced unless further time is given. Upon failure to so present such journal entry, the decision may be vacated and set aside by such judge, or such judge, upon such failure,

may enter the action 'dismissed for want of prosecution' * * *."

At the outset of the trial of this action in the Court of Common Pleas, counsel agree that defendant objected to the introduction of any evidence under the petition, for the reason that such a proceeding constituted a collateral attack upon the *nunc pro tunc* judgment entered in the Simovic divorce case. The trial court reserved that question, and after hearing, held as stated in the majority opinion .

This appeal on questions of law followed.

While the *rule* announced by the trial court might, under some circumstances, be the correct rule as between persons who are parties to the action, does the same rule pertain to third persons, not parties, whose rights are affected by the entry of the *nunc pro tunc* judgment?

Here, this appellant's rights under the National Service life insurance policy on the life of her son, attached and vested on the happening of the contingency insured against—viz., the death of her son, on November 6, 1945. *Oetting, Gdn.*, v. *Sparks*, 109 Ohio St., 94, 143 N. E., 184, syllabus 2. *Katz* v. *Ohio National Bank, Exr.*, 127 Ohio St., 531, 191 N. E., 782, syllabus 1.

At that time there was not even a pending divorce action between the Simovics, the divorce action having been dismissed for want of prosecution by the Common Pleas Court under Rule 13 (a) on December 18, 1942.

The attempted marriage between Gladys Louise Simovic and Snodgrass, Jr., took place at a time and under such circumstances that it could not even be claimed to be anything other than void *ab initio*.

So, at the time of Snodgrass, Jr's., death, he had no legal wife, and it follows that his mother's rights, as contingent beneficiary, immediately attached.

Thereafter, on February 5, 1946, the dismissal of

the Simovic divorce action was vacated, the action "reinstated," and the *nunc pro tunc* entry of a divorce decree spread upon the journal of the court. Such a proceeding, however, could not breathe the breath of life into a marriage contract between this defendant and Snodgrass, Jr., for that contract was void when executed, and continued so up to the time of Snodgrass' death, and thereafter, of course, was incapable of ratification.

When the entry *nunc pro tunc* was journalized on February 5, 1946, this plaintiff could not intervene in that action to protect her vested rights, because she was not a party thereto. She then did one of the things which she could do, when she filed the action under review.

If this action as filed below is held to constitute a collateral attack upon a valid judgment, then this plaintiff's case is the inadmissible one of a clear legal right without a remedy.

The writer of this opinion is convinced that the opinion of Spear, J., in the case of *Coe* v. *Erb*, 59 Ohio St., 259, 52 N. E., 640, 69 Am. St. Rep., 764, clearly permits the action filed by this plaintiff, and justifies the conclusion that this action does not constitute a collateral attack upon a valid judgment, but on the contrary is a legally justifiable attempt by this plaintiff to protect her vested right to the proceeds of the policy in question. It is stated in that opinion (pp. 268-272):

"While it is true that the *parties* must resort for relief from the judgment, to a direct attack, as by appeal, motion to correct, or proceeding in error, yet *strangers to the judgment*, not being entitled to impeach it directly, and who if the judgment were given full faith and effect, would be prejudiced in some pre-

existing right, are placed upon a different footing. It is said by Professor Freeman, in his work on Judgments, section 335, that 'being neither parties to the action, nor entitled to manage the cause nor appeal from the judgment, they are allowed to impeach it whenever it is attempted to be enforced against them.' * * * It is a general and established rule of law, that when a party's right may be collaterally affected by a judgment, which for any cause is erroneous and void, but which he cannot bring a writ of error to reverse, he may, without reversing, prove it so erroneous and void, in any suit, in which its validity is drawn in question. * * *

"* * * * In *Downs* v. *Fuller*, 2 Met., 135, it is held that: 'When a judgment, recovered contrary to law, is prejudicial to a third party, he may avoid it by plea and proof.' "

See, also, *Eldridge & Higgins Co.* v. *Barrere*, 74 Ohio St., 389, at pp. 394-395, 78 N. E., 516.

In my opinion, the entry *nunc pro tunc* of the judgment of divorce in this case was highly erroneous and void, for three reasons:

First, because the entry of dismissal was regularly made and finally disposed of the case, unless proper proceedings were instituted to set aside that entry and reinstate the case.

I believe that Rule 13 (a) of the Common Pleas Court (corresponding to some extent to Rule VIII of the Court of Appeals) is a valid rule, that the divorce case was rightly dismissed, and that all proceedings after such dismissal were void, as more fully set forth in the next heading.

I further believe that, while the court, as the maker of Rule 13 (a), might have refused to enforce it, whatever right there might have been in the court to enter

judgment *nunc pro tunc* before dismissing the action, was lost when the court determined to enforce the rule rather than enter judgment *nunc pro tunc*.

Second, because no proper proceedings were instituted to vacate the entry of dismissal and "reinstate" the case.

It will be noted that, not only was no ground of Section 11631, General Code, set forth in the motion attempting to vacate the judgment of dismissal, but that no semblance of a valid reason for vacation was offered; the purported reason being that plaintiff was "under the impression that defendant had paid the court costs." It will at once be evident that, even though payment of the costs had been made by the husband, the plaintiff would still have remained undivorced.

In addition, the proceedings were not commenced within the time limited for such proceedings by Section 11640, General Code.

Third, because courts are not authorized to enter judgments *nunc pro tunc* where, as here, the only reason advanced for the request is the party's own negligence.

Though courts have inherent power to enter judgments *nunc pro tunc*, the power in its proper use is limited primarily to delays attributable to the court, or at least in the interest of justice where no blame rests on the petitioning litigant; it is not, or at least should not be, used as a means of obviating the plain negligence of litigants.

"The power of the court to enter judgment *nunc pro tunc* should be used sparingly * * *; relief by entry *nunc pro tunc* will not be granted where the failure to enter the judgment at the proper time was due to the party's own carelessness or negligence. * * *

"So too such an entry will not be allowed where it will prejudice the rights of third persons who are without notice of the original rendition of the judgment * * *." 49 Corpus Juris Secundum, Judgments, Section 118 a.

And see 30 American Jurisprudence, Judgments, Section 103. 1 Freeman on Judgments (5th Ed.), Section 122.

Of course, great leeway is afforded courts during the same term.

In this case, no claim was made that plaintiff endeavored in any way whatsoever, before the proceedings here in question, to have the divorce judgment entered, or even that anyone had ever represented to her that the entry had been filed, or misled her in any way as to the status of the divorce proceeding.

It does not seem to me that the *Caprita case*, cited by the majority, has any application to the case at bar. There, one of the parties died two days after the announcement of the decision. Some two weeks later, and apparently at the same term of court, and particularly without any claimed negligence on the part of anyone, the trial court entered the judgment *nunc pro tunc*, although over the objection at that time of the surviving party.

There is another reason why I think the entry *nunc pro tunc* herein is void, but which only the Supreme Court can recognize at this time. That is the generally-accepted rule that, before a judgment *nunc pro tunc* can be entered under any circumstances after the end of the term, some memorial of a specific judgment must appear on the judge's docket or other court record. In this case no such record appears. The jacket of the original case contains only the information that the case had been heard and that a journal entry was to

be furnished; indicating, it seems to me, that the judgment in the case—whatever it was—was to be entered when the entry was furnished.

The Supreme Court of this state considered, in 1897, the question of extrinsic evidence where no such memorial was in existence, and decided that parol evidence could be admitted to ascertain what the judgment of the court was. *Jacks* v. *Adamson*, 56 Ohio St., 397, 47 N. E., 48, 60 Am. St. Rep., 749. However, since the weight of authority is contrary to that decision (49 Corpus Juris Secundum, Judgments, Section 120 c), the Supreme Court of this state may now desire to adopt the majority rule. See: *Puccinelli* v. *United States*, 5 F. (2d), 6 (where it was said that the "overwhelming weight of authority" supports the "memorial" rule); *Gagnon* v. *United States*, 193 U. S., 451, 48 L. Ed., 745, 24 S. Ct., 510; *DuPree* v. *Hart*, 242 Ala., 690, 8 So. (2d), 183; and especially *Young* v. *Young*, 165 Mo., 624, 65 S. W., 1016 (where it was held that a *nunc pro tunc* entry in violation of this rule is void).

It might also be observed in passing that the case of *Hoffman* v. *Shuey,* cited in the majority opinion, held that this record memorandum was necessary, and cited many cases where that court refused to enter judgments *nunc pro tunc* where such records did not exist.

And in the *Hobson case*, relied upon by the majority, it definitely appears from the opinion that the *nunc pro tunc* entry was made on the basis of a written memorandum by the judge who decided the case, and that the absence of the entry was due to inadvertence (it does not say of whom), rather than by reason of negligence of the petitioner. Also, in neither the *Caprita case* nor the *Hobson case* had the action been dismissed, and then purportedly reinstated for the

express purpose of entering a *nunc pro tunc* judgment, as in the case at bar.

If there be any vitality remaining in the rule that a court speaks only through its journal, then the Simovics were not divorced at the time of Snodgrass, Jr's., death, and Mrs. Simovic and Snodgrass were not legally married upon said date.

The only person then eligible to take under the law governing National Service insurance was this plaintiff, as contingent beneficiary, there being no legal wife.

I am not persuaded that a mother who brings a son into the world is relegated to a position of "gratuitous beneficiary" inferior to that of a woman who enters into a legally meretricious relationship with that son, nor am I convinced that any court would declare a constructive trust for the benefit of Gladys Simovic to deprive this plaintiff of the proceeds of an insurance policy on the life of her son, to which this plaintiff was legally entitled.

It is my opinion that the judgment under review should be reversed, and this plaintiff accorded the relief for which she prays in her petition.

I accordingly dissent from the conclusion announced by my colleagues.