317 P.2d 553

Edna BLACK, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, and Maricopa County, a Body Politic, Respondents.

No. 6332.

Supreme Court of Arizona.

Nov. 5, 1957.

William C. Fields, and Wade Church, Phoenix, for petitioner.

John R. Franks, Phoenix, for respondent The Industrial Commission of Arizona, Donald J. Morgan, Robert K. Park and James D. Lester, Phoenix, of counsel.

PHELPS, Justice.

This is a review by certiorari of an award of the Industrial Commission of Arizona denying petitioner Edna Black death benefits for the demise of Roy Lee Black. The final findings and award of the Industrial Commission confirm the fact that, as an employee of Maricopa County, Roy Lee Black suffered an injury by accident arising out of and in the course of his employment on September 29, 1955, which injury resulted in his death on October 8, 1955.

The sole question presented is whether petitioner, Edna Black, was his lawful widow. The answer to this question depends upon whether decedent was divorced from a former wife at the time of his marriage to Edna Black, and, if he was, whether a marriage contracted in Arizona within one year from the date of that divorce is valid.

On July 21, 1943 a marriage ceremony was performed in Yavapai County between Roy Black and Edna Glissman, who is the petitioner herein. In the Superior Court of Maricopa County, in a proceeding brought by Roy Black as plaintiff against Gertha Black as defendant the following decree was entered on November 9, 1955:

"No. 10499

"Decree

"This Matter came on regularly for hearing before this Court, Division # 3, on the 12th day of July, 1943, and plaintiff was present in person and was represented by his counsel, Austin O'Brien. The defendant was not present. It appearing that said defendant had filed herein her written acceptance of service of a copy of the complaint and summons herein, dated May 30, 1943, and agreed that this matter might be set at the convenience of the Court without further notice to her.

"Evidence was introduced on behalf of plaintiff and the Court being advised in the premises entered the following order:

" 'Order for decree of divorce for plaintiff against defendant.'

"Wherefore It Is Ordered, Adjudged and Decreed that the bonds of matrimony existing between the parties be and the same are hereby dissolved and plaintiff, Roy Black, is granted a decree of absolute divorce from defendant, Gertha Black.

"It Is Further Ordered and Decreed that the Clerk of this Court file this Decree Nunc Pro Tunc as of July 12, 1943.

"Done In Open Court this 9th day of November, 1955.

"Henry S. Stevens
"Judge"

The Industrial Commission contends that this degree of divorce could only be effective as of November 9, 1955, the date when Judge Stevens settled, approved and signed the written decree, and that the court's attempt to make the entry of the written decree effective *nunc pro tunc* as of July 12, 1943, is a nullity in the face of Rule 58(a) of the Rules of Civil Procedure of Arizona, 16 A.R.S. Rule 58(a) provides as follows:

"Judgment shall be entered when the court so directs. When the direction is that a party recover only money or costs, or that all relief be denied, the clerk shall enter judgment forthwith upon receipt by him of the direction, but when the direction is for other relief, the judge shall first promptly settle and approve the form of judgment. In cases of judgments for money or costs only, or that all relief be denied, the notation thereof in the civil docket, as provided by Rule 79(a) constitutes the entry of such judgment, and in cases granting any other relief, filing with the clerk of a form of judgment approved and signed by the judge, for recording in the civil order book, as provided by Rule 79(b) constitutes entry of such judgment, and in either case the judgment is not effective before such entry. The entry of the judgment shall not be delayed for taxing costs."

Clearly a divorce decree is a direction for "other relief" as referred to in the rule, and cannot be effective as a judgment before filing of the signed judgment with the clerk. Cf. Harbel Oil Co. v. Steele, 81 Ariz. 104, 301 P.2d 757. Such filing cannot take place until the judge first settles and approves the form of judgment. Here the form of the judgment was settled and approved by Judge Stevens on November 9, 1955, who directed its entry *nunc pro tunc* as of July 12, 1943.

Petitioner contends, on the other hand, that the Industrial Commission may not collaterally attack the decree of divorce involved in this case entered on November 9, 1955 *nunc pro tunc* as of July 12, 1943, and quotes from 49 C.J.S. Judgments § 402, in support of his contention.

In support of this quotation 49 C.J.S., supra, cites three cases in support of the proposition of law stated: Miller v. Muir, 115 Ind.App. 335, 56 N.E.2d 496; Allen v. Bagley, 234 Mo.App. 891, 133 S.W.2d 1027; and In re Cannon's Guardianship, 182 Okl. 171, 77 P.2d 64, 66. In both Allen v. Bagley and Miller v. Muir, the court said the parties attacking the judgment had the right to appeal. This they did not do and the judgment had become final. In the instant case of course not being a party to the divorce case, the Industrial Commission had no right to appeal. And in the In re Cannon's Guardianship case cited the court said that in establishing the fact that a judgment had been entered on some previous date.

"* * * The issues relating to whether he had jurisdiction of the subject-matter, or of the parties, or to render the particular judgment, are beside the point. * * * 'It is not within the purview of an order nunc pro tunc to operate ex post facto to give force to a chamber order which was void for want of jurisdiction, or to give validity to proofs taken in a chancery cause without authority of law under such void order.' "

In In re Cannon's Guardianship, supra, the court did say that "orders nunc pro tunc, when made, are judgments and are treated as such, as though the entry had been made at the time," citing 34 C.J. 82, section 222. Montgomery County v. Auchley, 103 Mo. 492, 15 S.W. 626, and Courtney v. Barnett, 65 Okl. 189, 166 P. 207 cited in 34 C.J., supra, seem to support it. See, also, 49 C.J.S. Judgments § 121. However, in the Montgomery County case, supra, both parties introduced evidence, no appeal was taken, and the court said the nunc pro tunc order became final and imported verity. In Courtney v. Barnett, supra, the trial court made findings of fact, both parties were present, no appeal was taken, and the Supreme Court of Oklahoma held the nunc pro tunc order could not be collaterally attacked.

We have consistently held that the function of an order or judgment nunc pro tunc is to make the record speak the truth and that such power is inherent in the court. We have made it clear that the court cannot do more than to make the record correspond with the actual facts. It cannot cause an order or judgment that was never previously made or rendered to be placed upon the record of the court. It is to record now for then an order actually made or a judgment actually rendered which through some oversight or inadvertence was never entered upon the records of the court by the clerk or which was incorrectly entered. Stephens v. White, 46 Ariz. 426, 51 P.2d 921; Wood's Pharmacy, Inc., v. Kenton, 50 Ariz. 53, 68 P.2d 705.

■ If no order has been actually made or judgment previously rendered, the court is without jurisdiction to enter such order or judgment. To do so would be in excess of its jurisdiction and therefore void. It follows that before a court has the power to enter an order or judgment *nunc pro tunc* in a case where the judge did not preside in the original trial that it must be shown to the satisfaction of the court, by competent evidence, that such order or judgment had been actually made or rendered on the date claimed.

■ The question of whether a *nunc pro tunc* judgment may be attacked collaterally is one of first impression in this court. After a careful consideration of the danger inherent in the improper exercise of the power of the courts to enter orders or judgments *nunc pro tunc,* we have reached the conclusion that if such orders or judgments are to be shielded from collateral attack, the court when directing an entry *nunc pro tunc* must: (1) make a record such that anyone who examines it may determine the nature of the clerical error sought to be corrected; and (2) place upon the face of the judgment or order a finding or recital to the effect that sufficient competent evidence was presented to sustain the order for entry *nunc pro tunc.* Under such circumstances it should not then be subject to collateral attack. Unless the judgment or the record does show such facts, it will be subject to collateral attack. Without this safeguard a judgment *nunc pro tunc* absolutely void for want of jurisdiction would be clothed with the same verity as a valid judgment. The law should never be thus circumscribed.

We find authority for this view. In Herman v. Ohio Finance Co., 66 Ohio App. 164, 32 N.E.2d 28, 30, 31, the court stated:

" ' * * * When a court exceeds its power in entering a purported *nunc pro tunc* judgment or order, such judgment or order is invalid.' National Life Ins. Co. v. Kohn, 133 Ohio St. 111, 11 N.E.2d 1020."

The Ohio court quoted with approval from Ruby v. Wolf, 39 Ohio App. 144, 177 N.E. 240, 241, as follows:

"While not doubting the power of the court to exercise this power to make *nunc pro tunc* entry * * *, we hold that the power of the court must be safeguarded so as to prevent any possible abuse of same. The entry must affirmatively show just what it is intended to correct and whether it was a correction to make the journal speak the truth by inserting into it that which actually took place, but which was mistakenly entered otherwise, or was intended to be in the nature of a modification or correction of an erroneous judgment."

Finally the court in Herman v. Ohio Finance Co., supra, said:

"The purported entry *nunc pro tunc* in the instant case fails to disclose the ground upon which the court acted, nor does it disclose what it was intended to correct, nor does it vacate the judgment previously rendered in any way."

In Bryan v. Streeter & Smithers, 57 Ala. 104, the court said with respect to an order *nunc pro tunc* that:

"If a judgment nunc pro tunc affirms that sufficient matter to authorize it appeared to the satisfaction of the court, the presumption is, in the absence of a disclosure of the particular evidence, that the judgment is founded on legal evidence."

And in Price & Simpson v. Gillespie, 28 Ala. 279, the court said:

"A recital in a judgment nunc pro tunc, that sufficient matter to authorize it to be entered was disclosed to the court 'by sufficient, competent and satifactory evidence', will sustain it, if the parties appearing upon the motion to perfect the judgment, and do not show by bill of exceptions, or in some appropriate manner, that such recital is untrue."

The case of Lipscomb v. Bessemer Board of Education, 258 Ala. 47, 61 So.2d 112, decided in 1952, is to the same effect. Of course the converse is true, i. e., unless the records do affirmatively show either upon the face of the judgment or order *nunc pro tunc* or elsewhere in the records presented that such judgment or order is supported by sufficient competent evidence to sustain it, it may be collaterally attacked.

We therefore adopt as a rule of law in this jurisdiction that unless the records show in the manner above stated that a judgment or an order entered *nunc pro tunc* is supported by competent evidence satisfactorily establishing to the trial court that an order or judgment actually had been previously made or rendered and ordered entered, and through oversight, inadvertence, or some other adequate reason had not been entered by the clerk of the court, or had been incorrectly entered, such order or judgment is subject to collateral attack.

█ In the instant case the only thing appearing in the judgment *nunc pro tunc* or in the records is a minute entry appearing on the records of the court on July 12, 1943. This entry reads as follows:

"Order for decree of divorce for plaintiff against defendant."

This is clearly not a judgment under the provisions of Rule 58(a), supra. It is our view that, regardless of the rule of law above stated (which we are adopting in this case), the record presented strongly negatives any claim that a judgment was rendered or that a written judgment was settled, approved, and signed or ordered entered on that date. It is significant also that no motion or petition for the issuance

of an order or judgment to be entered *nunc pro tunc* appears in the record. Neither is there a notice to anyone that a hearing was to be held; nor is there any indication anywhere that any evidence in support of the truth of any of the facts necessary to enable the court to enter a valid order or judgment *nunc pro tunc* was either offered or received by the court.

We believe the rule above adopted is based upon adequate authority and precedent in the jurisdictions cited. We believe it to be a wholesome requirement and that it will adequately safeguard parties litigant from having a judgment entered *nunc pro tunc* against them in cases where such judgment is void because the court was without jurisdiction to render it or to order its entry. This makes it unnecessary to determine whether a marriage contracted in Arizona within one year after having been divorced in Arizona is valid.

Award affirmed.

UDALL, C. J. and WINDES, J., concur.

STRUCKMEYER, Justice (dissenting).

The principal question to be determined here is the effect that must be given by the Industrial Commission to the decree of the Superior Court of Maricopa County. Before entering into an examination of the law directly determinative of this question, some significant distinctions should be observed. Ultimately, in the course of any litigation, there arrives a time when the court hearing the cause decides wherein the respective rights of the parties lie. At this point the court makes known the results of its conclusions as to the law on the facts. This may be done in a number of different ways. Customarily, it is by pronouncement in open court in the presence of the litigants or their attorneys. This pronouncement is, I believe, universally accepted as the rendition of judgment.

"* * * It is well established that the rendition of a judgment is the judicial act performed by the court at the time it makes its pronouncement and that the entry of a judgment on the record is simply a ministerial act performed by the clerk." In re Young's Estate, 414 Ill. 525, 112 N.E.2d 113, 117.

The same distinction has been repeatedly observed in this state.

"The rendition of a judgment is the act of the court in pronouncing its judgment, and differs from the entry or filing of the judgment in that the former act is the declaration of the court from the bench announcing its decision, while the entry is the act of the clerk in writing it upon the records of the court." American Surety Co. of New York v. Mosher, 48 Ariz. 552, 561, 64 P.2d 1025, 1029.

In Moulton v. Smith, 23 Ariz. 319, 203 P. 562, 563 we said:

"  *   *   *   By the term 'rendering judgment' is meant the act of the court in announcing its final determination of the rights of the parties to the action." (Citing cases.)

and

"  *   *   *   the practice of filing written judgments, signed by the judge, is commendable, as remarked by the court in Kinsley v. New Vulture Mining Co., 11 Ariz, 66, 90 Pac. 438, 110 Pac. 1135, but it can properly go no further than to give perhaps in a more detailed way what the judgment already contains."

We also said, quoting from In re Cook's Estate, 77 Cal. 220, 17 P. 923, 19 P. 431, 1 L.R.A. 567, 11 Am.St.Rep. 267:

"  '  *   *   *   when, after the trial and final submission of the case, the court pronounces a judgment in apt language, which finally determines the rights of the parties to the action, and leaves nothing more to be done except the ministerial act of the clerk in entering it, and *especially when what the court has pronounced has been entered in the minutes,* then the judgment has been rendered, and the *   *   *" (Italics mine.)

The court then, in suggesting the proper form of an order, observed:

"This   *   *   *   avoids the serious consequences of proceeding upon the erroneous theory that the judgment is not rendered until it is signed and filed."

The foregoing statements of the court in the Moulton case, supra, were made under the circumstance that a money judgment was rendered in favor of the plaintiff. They are, of course, equally applicable to other types of judgments, the dominant question being whether the court has actually pronounced the sentence of the law upon the facts. Of course, in those instances where the court merely announces which party is to prevail in the action with the details to be worked out at a later time, there may be no actual pronouncement of the sentence of the law upon the facts. It is, therefore, possible for the rendition of judgment to be postponed to the moment of the signing of the written judgment, and in that event the signing is a substitute for the oral pronouncement.

Generally, in the United States, the time of rendition of judgment is the time at which appeal starts and is the time which entitles the prevailing party to execution. Cf. Jackson v. Sears, Roebuck and Co., 83 Ariz. 20, 315 P.2d 871. Consequently and because of the importance of the date of the rendition of judgment, statutes or rules of court commonly exist which purport to either (1) provide for certain formalities which must accompany the rendition of judgment in order that the time thereof be fixed with certainty, or (2) postpone the

effective date of the judgment until some formality has been completed, such as its entry into the proper record. In this jurisdiction we have illustrations of both. Formerly, under what was known as Rule VII, Uniform Rules of the Superior Courts, effective May 15, 1932, no judgment was rendered until a formal written judgment, signed by the trial judge, was filed with the clerk. Paul v. Paul, 28 Ariz. 598, 238 P. 399; American Surety Co. of New York v. Mosher, supra. Thus, by court rule, a judgment was not pronounced, rendered, until the concurrence of these acts.

This practice was abandoned on the adoption of Rule 58(a), adapted from Federal Rule 58, Rules of Federal Procedure, 28 U.S.C.A. By Rule 58(a) the effective date of the judgment is postponed until the formalities specified therein have been completed. In the case of a judgment for money or costs only, or that all relief be denied, it is the time when the clerk enters the judgment, *previously rendered,* in the civil docket. In cases granting any other relief, it is the filing with the clerk of a judgment approved and signed by the judge. Professor Moore, in his discussion of the Federal practice, makes the following observation:

"In order to achieve clarity, certain other related terms that are commonly used in this area should be defined and distinguished. *Rendition* of judgment signifies the pronouncement ·or an-nunciation of the adjudication or judgment of the court, not the entry nor the recordation of the judgment. This pronouncement may be written or oral, but must demonstrate a present intention to adjudge and constitute an adjudication of the matter. *Entry* of judgment is the notation of the judgment in the civil docket by the clerk, as provided by Rule 79(a); * * *" 6 Moore's Federal Practice, Section 54.02, p. 16, (2d Ed. 1953).

The important point to be observed is that the effective date of the judgment has no bearing on the question of whether there has been in fact an adjudication of the controversy, a judgment pronounced.

This leads me to the following conclusions: The order for decree of divorce of July 12, 1943, being predicated as it was on evidence introduced at a hearing, is an adjudication of the controversy and in the strictest sense of the language used is a rendition of judgment. There is before this court, as there was before the Commission, unimpeached evidence of the fact that a judgment was rendered. In accordance with Rule 58(a) nothing more remained to be done in order to have an effective judgment except that a form of judgment be settled, signed, and filed with the clerk. As pointed out, this was done on the 9th day of November, 1955 when Judge Stevens adjudged and decreed:

" * * * the bonds of matrimony existing between the parties be and the same are hereby dissolved * * *."

Because the Superior Court had jurisdiction of the subject matter and person, and the power to approve and sign a decree of divorce, it must be held that there then came into existence a binding judgment conclusive against collateral attack by any of the parties or their privies. Schuster v. Schuster, 51 Ariz. 1, 73 P.2d 1345; Collins v. Superior Court, 48 Ariz. 381, 62 P.2d 131.

The majority of this court in their decision seem to hold that the order of November 9, 1955 directing the Clerk of Court to file this decree nunc pro tunc as of July 12, 1943, is absolutely void for want of jurisdiction. With this I am in complete disagreement. The power of the Superior Court as a court of general jurisdiction ought not to be so circumscribed. The Supreme Court of the United States recognizes the power to enter a judgment retrospectively, even where there is a delay in the rendition.

" * * * We deem it unnecessary to present an analysis of the authorities, some of which are cited in a note to this opinion, but content ourselves with saying that the rule established by the general concurrence of the American and English courts, is, that where the delay in rendering judgment or decree arises from the act of the court, that is, where the delay has been for its convenience, or has been caused by the multiplicity or press of business or the intricacy of the questions involved, or for any other cause not attributable to the laches of the parties, but within the control of the court, the judgment or decree may be entered retrospectively, as of a time when it should or might have been entered up. * * *" Mitchell v. Overman, 103 U.S. 62, 26 L.Ed. 369.

I can find no dissent to the proposition that where a judgment has actually been rendered and that rendition is reflected in the record of the court, the judgment may be entered nunc pro tunc if the delay is not occasioned by the party applying. Norton v. City of Pomona, 5 Cal.2d 54, 53 P.2d 952; Freshour v. Freshour, 233 Iowa 1144, 11 N.W.2d 375; Arnd v. Poston, 199 Iowa 931, 203 N.W. 260; Wallace Grain & Supply Co. v. Cary, 303 Ill.App. 221, 24 N.E.2d 907, reversed on other grounds 374 Ill. 57, 28 N.E.2d 107; In re Saric, 197 Ind. 1, 149 N.E. 434; Gorman v. Lusk, 280 Ky. 692, 134 S.W.2d 598; Pepple v. Stacy, Mo.App., 282 S.W. 451, 454; Watson Bros. Transportation Co. v. Red Ball Transfer Co., 159 Neb. 448, 67 N.W.2d 475; Bowie Sewerage Co. v. Watson, Tex.Civ.App., 274 S.W. 179; Chavarria v. Macias, Tex. Civ.App., 252 S.W.2d 262. For example, in Norton v. City of Pomona, supra, the

Supreme Court of California said [5 Cal. 2d 54, 53 P.2d 956]:

"* * * When the state of the record *or the minutes kept by the court or clerk* show that a suitor was entitled to a particular judgment but that the judgment was not entered when it might have been, such judgment may subsequently be entered so as to relate back to the time when it should have been entered, providing the delay was not occasioned by the party applying. Such an order should be granted or refused as justice may require in view of the circumstances of a particular case. * * *" (Italics mine.)

In the instant case, the basis of the order directing the entry of judgment nunc pro tunc is the minute entry of the Clerk of Court dated July 12, 1943. This minute entry was recited in the judgment. No more competent evidence of rendition of judgment can be required.

The order of Judge Stevens directing entry of the judgment nunc pro tunc gives the judgment retrospective operation so as to take effect at the time of rendition.

"The rule that there can be no judgment until it is entered in the proper record of the court has no reference to the effect to be given a nunc pro tunc entry." (Citing authority) State v. Harbour, 240 Iowa 705, 37 N.W.2d 290, 293.

"* * * Generally, however, a nunc pro tunc entry of judgment, or a nunc pro tunc correction of the records of a judgment, is given a retrospective operation as between the parties thereto, so as to take effect from the time of the rendition, or of the original entry, of the judgment. Under this rule, a judgment entered nunc pro tunc is respected and enforced in the same manner and to the same extent as if entered at the proper time, and a record properly amended *nunc pro tunc so as to make it speak* the truth respecting the actual doings of the court stands afterwards as if it had never been defective, or had been corrected at once at the proper time. * * *" 30 Am.Jur. 886, Judgments, Section 123.

Since I am of the opinion that the Superior Court had jurisdiction to enter the decree of divorce and had jurisdiction to direct its entry nunc pro tunc effective as of July 12, 1943, the sole remaining question is the effect which must be given to it by the Industrial Commission.

It is well settled that, at least ordinarily, a judgment is conclusive only between the parties and their privies. National Public Service Insurance Company v. Welch, 81 Ariz. 156, 302 P.2d 926. There are, however, certain well recognized exceptions. Clearly, it is evidence of the fact of its own rendition, Mutual Benefit Health and

Accident Association v. Neale, 43 Ariz. 532, 33 P.2d 604, and it is universally held that an action for divorce, being in rem, and the question of divorce being one affected with public policy, *a decree of divorce is binding upon all persons in the world.*

"The doctrine of res judicata as a bar or as an estoppel applies between the parties and their privies; but it does not ordinarily operate so as to affect strangers who are not in privity with a party. This principle applies in divorce actions, but there is one exception: a proceeding in rem with respect to a status is conclusive upon all the world; and so a judicial dissolution of marriage in a proceeding for an absolute divorce binds strangers in so far as it determines that from the entry of the decree whatever marriage there may have been between the parties is dissolved and that the parties are single persons as to each other." 17 Am.Jur. 645, Divorce and Separation, Section 550.

\*      \*      \*      \*      \*      \*

"In a proceeding in rem with respect to a status the judgment is conclusive upon all persons as to the existence of the status." Restatement of the Law —Judgments, Section 74.

In the present case, the Industrial Commission in its decision upon rehearing made this finding of fact:

"That the said Edna Black was not, in fact, the lawful wife of the said Roy Lee Black \* \* \* on October 8, 1955, the date of his death, and that the said Edna Black is not, in fact, the lawful widow of said deceased \* \* \*."

This finding has no support in the evidence because it is contrary to the status of Roy Lee Black as a divorced man established by the binding judgment of the Superior Court.

The majority of this court rely and quote extensively from two decisions from the State of Ohio: Herman v. Ohio Finance Company and Ruby v. Wolf, supra. I do not consider those cases as being contrary to petitioner's position here. In the later case, Snodgrass v. Snodgrass, 85 Ohio App. 285, 88 N.E.2d 616, where the decedent was a soldier and the action was for a declaratory judgment by the mother as to the marital status of the decedent's purported wife, the wife being the principal beneficiary under the National Service Life Insurance and the mother the contingent beneficiary, it was held that the mother did not have such interest as to attack collaterally the nunc pro tunc divorce decree granting the wife a divorce from a prior husband after decedent's death. This case is squarely on point in that it answers many of the questions at issue here. The Ohio court quoted with approval from 1

Freeman on Judgments, 5th Ed., Section 138:

"The expression so frequently made that a nunc pro tunc entry is not to affect the rights of third persons *must not be understood as signifying that effect must be denied to such an entry in all cases where third persons have acquired interests.* Courts in determining whether or not to amend or perfect their records are controlled by considerations of equity. If one not a party to the action has, when without notice of the rendition of the judgment or of facts from which such notice must be imputed to him, advanced or paid money or property, or in other words, has become a purchaser or encumbrancer in good faith and upon a valuable consideration, then the subsequent entry of such judgment nunc pro tunc will not be allowed to prejudice him. *Otherwise its effect against him is the same as if it had been entered at the proper time."*

And concluded with this statement:

"It is the conclusion of a majority of this court that the petitioner's interest does not come within the class of interests which may be asserted despite the retroactive order of the court, and that the trial court correctly held that the decree nunc pro tunc could not be collaterally attacked in this proceeding."

The case of Hobson v. Dempsey Construction Company, 232 Iowa 1226, 7 N.W. 2d 896, 899, is another example of where the facts are so squarely on the point that it should not be passed without some comment. There the husband was killed in an accident arising out of the course of his employment and the wife filed with the Iowa Industrial Commission an application for arbitration against his employer. The mother of the decedent intervened, praying that the compensation be awarded to her, alleging that the applicant was not the decedent's surviving spouse. In passing upon the issues, the Iowa court stated:

"* * * Most authorities hold that, in such cases, a nunc pro tunc entry as of the date of the former judgment is sufficient to dissolve the marriage relation *as of said former date.* (Citing authorities.)

\*   \*   \*   \*   \*   \*

"Appellant (mother) contends she is an innocent third person who acquired vested interests before said nunc pro tunc entry was made, and, therefore, that said entry could not affect her said property rights."

After discussing this contention, the court concluded:

"* * * Appellant was not an innocent third person without notice within the meaning of the foregoing doctrine, and her claim to the workmen's compensation is not entitled to

preference over appellee's rights as evidenced in part by the nunc pro tunc entry."

Since I am of the opinion that the decree of divorce was conclusive as to the marital status of Roy Lee Black at the time of his marriage to Edna Black, petitioner herein, and of the further opinion that the Commission does not have sufficient interest to question the nunc pro tunc entry, I believe that the award of the Commission denying benefits to Edna Black should be set aside and vacated.

JOHNSON, Justice.

I concur in this dissent.