WAYNE B. NICHOLS, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Nichols v. Commissioner
Docket No. 2485-71
United States Tax Court
T.C. Memo 1973-114; 1973 Tax Ct. Memo LEXIS 173; 32 T.C.M. (CCH) 507; T.C.M. (RIA) 73114; May 21, 1973, Filed Wayne B. Nichols, pro se Wright Tisdale, Jr., for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioner's income tax in the amount of $1,927 for the taxable year 1967. The issue for decision is whether petitioner received a constructive dividend under section 301(a) of the Internal Revenue Code of 1954, [1] in the amount of $7,500 when his controlled corporation redeemed the stock owned by his wife in connection *174 with a settlement incident to a divorce. FINDINGS OF FACT. Some of the facts have been stipulated and are found accordingly. Petitioner, Wayne B. Nichols, resided in Barberton,Ohio, at the time of the filing of the petition herein. We filed his Federal income tax return for the taxable year 1967 with the district director of internal revenue at Cleveland, Ohio. Prior to August 7, 1967, petitioner and Ada B. Nichols (Ada) were husband and wife. Until the time of their divorce, petitioner was a 50 percent shareholder of Nichols-Hoffman Dry Cleaners, Inc. (Nichols-Hoffman) and held the offices of president and chairman of the board. Ada was the other 50 percent shareholder. Ada instituted divorce proceedings against petitioner in the Court of Common Pleas, Summit County, Ohio, on October 3, 1966. Petitioner, his wife, their respective attorneys, and petitioner's accountant conferred on several occasions for the purpose of reaching a mutually agreeable property settlement. Of particular concern was the disposition of Ada's stock interest in the dry cleaning business. Sometime prior to July 25, 1967, agreement *175 was reached that Nichols-Hoffman would redeem Ada's 50 shares of stock for $7,500. Petitioner had prior to reaching this understanding with Ada suggested that he would either dispose of his interest in Nichols-Hoffman for $7,500 leaving Ada as sole owner of the business or arrange for Ada to receive $7,5000 for her interest. On July 30, 1967, the board of directors of Nichols-Hoffman held a special meeting with petitioner and his father Bernard Nichols present. Ada was absent. The pertinent part of the minutes of the meeting read as follows: Mr. Nichols reported that he and his wife, Ada Nichols, were in the process of getting a divorce and that her fifty shares of stock in the Nichols-Hoffman Cleaners, Inc. was for sale. Mr. Nichols further reported that he did not have the cash to buy the stock himself as he has the right to do so under the terms of a Separation Agreement, however, recommended that the Nichols-Hoffman Cleaners, Inc. buy said stock. It was moved by Bernard Nichols, seconded by Wayne Nichols that the Nichols-Hoffman Cleaners, Inc. buy fifty shares of Nichols-Hoffman Cleaners, Inc. stock from Ada Nichols and that Wayne Nichols be authorized to handle said *176 transaction. All voted Aye. Wayne Nichols suggested that since Ada Nichols would soon be divorced from him and would have no further interest in the Company that she be replaced on the Board of Directors. On July 31, 1967, the parties signed a separation agreement providing for the disposition of property belonging to petitioner and Ada which was later incorporated into the divorce decree "* * * in full settlement and satisfaction and in full release of all rights, claims of alimony, dower, attorney's fees, inheritance and distribution in the property of each other that may be at any time hereafter asserted by either party * * *." The separation agreement was drafted by Ada's attorney and provided with respect to the disposition of Ada's 50 percent interest in Nichols-Hoffman as follows: 2. Second Party [petitioner] shall pay the sum of $7,500.00 to the First Party [Ada] as the full purchasing price of one-half interest in Nichols Dry Cleaning, Inc. Party of the First Part [Ada] shall execute all necessary papers and sign all necessary stock pursuant to this clause. Party of the Second Part [petitioner] shall hold Party of the First Part [Ada] harmless from any *177 and all liabilities out-standing against Nichols Dry Cleaning, Inc. and now or in the future. On August 7, 1967, the Court of Common Pleas granted Ada's petition for divorce. The aforementioned separation agreement was incorporated into the divorce decree. On August 7, 1967, Ada endorsed her stock certificate of 50 shares to Nichols-Hoffman and received $7,500 from the corporation as payment therefor. The corporation held the shares as treasury stock. As of August 7, 1967, Nichols-Hoffman had present and accumulated earnings and profits in excess of $7,500. On July 10, 1969, the Internal Revenue Service began an examination of petitioner's 1967 Federal income tax return. Thereafter, petitioner filed a motion in the Court of Common Pleas, Summit County, Ohio, for a "Correcting Journal Entry." That Court from "the evidence and statement of Counsel" found that paragraph 2 of the separation agreement should be corrected to have the first sentence read: 2. Second Party, as President of and agent for Nichols Dry Cleaning, Inc., shall pay the sum of $7,500 to the First Party as the full purchasing price of one-half interest in Nichols Dry Cleaning, Inc. * * * [Emphasis supplied] *178 and entered its order on November 7, 1969, making the correcting entry. Petitioner on his 1967 income tax return did not include any portion of the $7,500 paid by Nichols-Hoffman to Ada as a dividend. Respondent in his notice of deficiency determined that petitioner received a taxable dividend from the payment by the corporation to Ada in the amount of $7,500 in the year 1967. OPINION. Respondent contends that under the provisions of sections 301(a) and 316(a) the Code [2] petitioner received a dividend from Nichols-Hoffman in the amount of $7,500 when that corporation redeemed Ada's stock. It is respondent's position that the facts in this case support the conclusion that petitioner was personally liable to pay Ada $7,500 either as the purchase price of her stock or as alimony and that when Nichols-Hoffman discharged petitioner's personal liability for this payment petitioner received a dividend. It is well settled that if a corporation discharges a personal indebtedness of a stockholder whether that indebtedness arises from the stockholder's purchase of stock of the corporation or from other transactions the stockholder has received a dividend from the corporation. Tirzah A. Cox, 56 T.C. 1270 (1971); *179 Shepard v. Commissioner, 340 F. 2d 27 (C.A. 6, 1965) affirming per curiam a memorandum opinion of this Court, certiorari denied 382 U.S. 813 (1965); Zipp v. Commissioner, 259 F. 2d 119 (C.A. 6, 1958) affirming per curiam 28 T.C. 314 (1957). However, where a corporation redeems all the shares of one or more of its shareholders pursuant to proper action of the corporation approving such redemption, there is no dividend to the remaining shareholders resulting from their increased interest in a corporation with its reduced assets after the redemption. Richard B. Bennett, 58 T.C. 381 (1972); Frank Ciacio, 47 T.C. 447 (1967). The question here therefore reduces itself to one of fact. The facts are clear that petitioner took on no obligation to pay alimony to Ada. Although there are general words in the property settlement agreement between petitioner and Ada that the agreement discharges all petitioner's liabilities to Ada including alimony, the entire agreement concerns itself with property settlement. Furthermore the disposition by Ada of her stock involved a property owned by her individually and was in *180 no way connected with alimony. In our view the evidence also shows that petitioner had no personal obligation to purchase Ada's stock. Therefore, the redemption of Ada's stock by Nichols-Hoffman did not discharge any personal obligation of petitioner. The record in this case is absolutely clear that during all the negotiations *181 between petitioner and Ada and their attorneys it was understood by all concerned that the stock was to be redeemed by the corporation. Ada's attorney testified to this effect as did petitioner's attorney and petitioner's accountant. The fact that the agreement was that the corporation redeem Ada's stock is borne out by the corporate resolution to redeem the stock passed the day before Ada and petitioner signed their property settlement agreement. Respondent contends that even though the understanding between the parties was that Ada's stock would be redeemed by the corporation, the words of the agreement are to the contrary and since the agreement was incorporated in the divorce decree it placed an obligation on petitioner to purchase Ada's stock irrespective of the actual agreement of the parties. Respondent apparently recognizes that parties to a contract are not bound by wording placed in the contract by mutual mistake particularly when those words are as here somewhat ambiguous. The words are that petitioner "shall pay the sum of $7,500 to "Ada" as the full purchasing price of one-half interest" in Nichols-Hoffman. The provision is not that petitioner will personally buy *182 Ada's stock. It is understandable that petitioner would overlook the distinction in "pay to Ada" and "cause the Corporation to pay" to Ada the $7,500 until the problem arose in connection with the examination of his income tax liability. See Frank Ciaio, supra, a p. 460. Respondent contends, however, that once these advertent words were incorporated in a Court decree, petitioner became personally liable to Ada even though the actual agreement of the parties was to have the Corporation redeem Ada's stock. The record shows that the Court of Common Pleas, Summit County, Ohio, did not take the narrow view respondent urges upon us. When the fact that the provision in the contract was misworded by mutual mistake of the parties was brought to that Court's attention it entered a nunc pro tunc order correcting the words of the contract to conform to the actual agreement of the parties. Under Ohio law, the changing of a court record may be accomplished by a nunc pro tunc entry only to correct the records to speak the truth, and the judgment first entered may not be altered nunc pro tunc unless that court actually did originally decide the issues in the way set out in the *183 nunc pro tunc entry. In re Estate of Cook, (Oh. Sup.Ct. 1969) 249 N.E. 2d 799, 803. Herman v. Ohio Finance Co. 66 Ohio App. 164, 32 N.E. 2d 28 (1940); Snodgrass v. Snodgrass, (Ct. App. Ohio, 1948) 88 N.E. 2d 616; Krechman v. Krechman, (Ct. App. Ohio 1959) 170 N.E. 2d 91 (1959). The separation agreement in this case was drawn up by the parties and incorporated into the divorce decree as a fair and reasonable settlement. The clear inference from the record is that the Ohio Court incorporated into its decree the separation agreement of the parties that had reduced to writing the terms actually agreed upon by the parties. Accordingly, when the Court of Common Pleas changed the record to conform to the separation agreement as actually made by petitioner and Ada, the record was changed "to speak the truth." The record was changed to reflect the judgment as actually rendered. The fact that the parties did not realize the inaccuracy in the record until the Service began its inquiry does not alter our conclusion. Respondent alternatively contends that the Correcting Journal Entry, even though valid, would be ineffective to bind the *184 corporation, since the corporation was never made party to the divorce action and never came under the Court's jurisdiction relying on Schlenker v. Ferdon, 27 Ohio App. 222, 153 N.E. 113 (1926). While under different factual circumstances this contention might be well taken, it is not valid under the facts here present. Even though the corporation was not a party to the divorce action, by resolution of the directors on July 30, 1967, the corporation was to redeem Ada's stock. Therefore, petitioner was authorized to assume the contractual liability under the agreement of July 31 between petitioner as agent for the corporation and Ada to have the corporation redeem Ada's stock. We find from all the facts of record that the agreement between petitioner and Ada in accordance with petitioner's authorization by Nichols-Hoffman was that the corporation should purchase Ada's 50 shares of stock in Nichols-Hoffman and that such agreement was not in the nature of a division of property between petitioner and Ada nor was it a substitute for alimony. We, therefore, conclude that respondent erroneously held the $7,500 paid by Nichols-Hoffman to Ada for her stock to be a dividend *185 to petitioner. Decision will be entered for petitioner. Footnotes
1. All references are to the Internal Revenue Code of 1954. ↩
2. The pertinent sections of the 1954 Code are as follows: SEC. 301. DISTRIBUTIONS OF PROPERTY. (a) In General. - Except as otherwise provided in this chapter, a distribution of property (as defined in section 371(a)) made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c). * * * (c) Amount Taxable. - In the case of a distribution to which subsection (a) applies - (1) Amount constituting dividend. - That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income. * * * SEC. 316. DIVIDEND DEFINED. (a) General Rule. - For purposes of this subtitle, the term "dividend" means any distribution of property made by a corporation to its shareholders - * * * (2) out of its earnings and profits of the taxable year * * * ↩