IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**DAVID C. SHINN**,
*Plaintiff/Appellant*,

*v.*

**ARIZONA BOARD OF EXECUTIVE CLEMENCY**,
*Defendant/Appellee.*

**NEVADA FREEMAN**,
*Real Party in Interest.*

No. CV-21-0275-PR
Filed December 21, 2022

Appeal from the Superior Court in Maricopa County
The Honorable Randall H. Warner, Judge
No. CV2020-007052
**REVERSED AND REMANDED**

Memorandum Decision of the Court of Appeals, Division One
No. 1 CA-CV 20-0617
Filed Oct. 19, 2021
**VACATED**

COUNSEL:

Daniel P. Struck, Nicholas D. Acedo (argued), Jacob B. Lee, Struck Love
Bojanowski & Acedo, PLC, Chandler, Attorneys for David C. Shinn

Mark Brnovich, Arizona Attorney General, Dena Benjamin, Assistant
Attorney General, Phoenix, Attorneys for Arizona Board of Executive
Clemency

Lindsay Ann Herf, Katherine Puzauskas, Karen Singer Smith (argued),
Arizona Justice Project, Phoenix; and Michael L. Piccarreta, Piccarreta Davis

Keenan Fidel PC, Tucson, Attorneys for Nevada Freeman

Howard R. Cabot, Austin C. Yost, Perkins Coie LLP, Phoenix; Noel Fidel, Law Office of Noel Fidel, Phoenix; and Randal McDonald, Arizona Justice Project, Phoenix, Attorneys for Amicus Curiae Everett Berry

Timothy J. Eckstein, Travis Hunt, Osborn Maledon PA, Phoenix, Attorneys for Amicus Curiae Rudolph Turner

Colleen Clase, Arizona Voice for Crime Victims, Phoenix, Attorney for Amicus Curiae Arizona Voice for Crime Victims

Timothy J. Myers, Civil Litigation Clinic, Public Interest Law Firm, Phoenix, Attorney for Amici Curiae Marcia Freeman and Carrie Davis

———————————

JUSTICE LOPEZ authored the Opinion of the Court, in which VICE CHIEF JUSTICE TIMMER and JUSTICES BOLICK, BEENE, MONTGOMERY, KING, and PELANDER (RETIRED)[*] joined.

———————————

JUSTICE LOPEZ, Opinion of the Court:

¶1        We consider whether a trial court's nunc pro tunc order modifying a criminal sentence for first degree murder—issued almost thirty years after the sentence was imposed and in the absence of any clerical mistake or error in the record—is subject to collateral attack. In addressing this issue, we delineate courts' authority to enter orders or judgments nunc pro tunc and also clarify this Court's jurisprudence on the voidability of judgments. We hold that courts lack authority to enter a nunc pro tunc order absent clerical error or mistake in the record, rendering such an order void and subject to collateral attack.

## BACKGROUND

¶2        From 1973 to 1984, Arizona's sentencing statute for first degree murder provided that "[a] person guilty of first degree

---

[*]        Chief Justice Robert Brutinel has recused himself from this case. Pursuant to article 6, section 3 of the Arizona Constitution, Justice John Pelander (Ret.) of the Arizona Supreme Court was designated to sit in this matter.

murder . . . shall suffer death or imprisonment in the custody of the department of corrections for life, without the possibility of parole until the completion of the service of twenty-five years . . . ." A.R.S. § 13-703(A) (1984) (now codified as A.R.S. § 13-751). In 1985, the legislature amended the sentencing statute, eliminating the word "parole" and replacing it with the phrase "without possibility of release on any basis." A.R.S. § 13-703(A) (1985). In 1993, the legislature further amended § 13-703(A), adding a "natural life" sentence as another sentencing option. *See* A.R.S. § 13-703(A) (1993). In that same year, the legislature amended A.R.S. § 41-1604.09 to eliminate parole for all felony offenses committed by adult offenders on or after January 1, 1994. *See* A.R.S. § 41-1604.09 (1993).

¶3        These amendments effectively limited the sentencing options for an adult defendant convicted of first degree murder committed on or after January 1, 1994, to (1) death; (2) natural life; or (3) life without the possibility of release until either the completion of twenty-five or thirty-five years, depending on the age of the murder victim. *See* § 41-1604.09 (1993); § 13-703(A) (1993). Thus, a defendant could only be "released" through an executive pardon or commutation of sentence. § 41-1604.09 (1993); § 13-703(A) (1993).

¶4        On October 7, 1994, a jury convicted Nevada Freeman of first degree murder committed on June 16, 1994. Judge John Kelly subsequently sentenced Freeman to "[a] sentence of 25 calendar years without the possibility of release until those years have been served." Freeman's sentencing order reflected the trial court's oral pronouncement, providing that the sentence was "life, without the possibility of release before 25 calendar years have been served."

¶5        On May 7, 2019, the Arizona Department of Corrections Rehabilitation & Reentry ("ADCRR") mistakenly certified Freeman as parole eligible. On July 30, 2019, the Arizona Board of Executive Clemency (the "Board") voted unanimously to grant Freeman parole on house arrest. On October 8, 2019, before Freeman was due to be released, ADCRR discovered its error, rescinded its parole certification, and requested that the Board rescind its order. The Board held a rescission hearing on October 23, 2019, and took the matter under advisement pending this Court's decision in *Chaparro v. Shinn*, 248 Ariz. 138 (2020).[1]

---

[1] In *Chaparro*, we held that we lacked subject matter jurisdiction to correct an illegally lenient sentence that improperly granted parole eligibility because the State's failure to appeal the sentence rendered it final. 248 Ariz. at 139–40 ¶¶ 1–2, 143 ¶¶ 22–23.

**¶6**        After we issued the *Chaparro* opinion, the Board held a second rescission hearing on May 12, 2020. There, ADCRR argued it had erroneously certified Freeman as parole eligible and requested that the Board rescind its grant of parole. Freeman presented a letter from Judge Kelly (since retired), dated April 29, 2020, which stated that he had "inten[ded] that Mr. Freeman be eligible for all avenues of release, including parole, after twenty-five years," not just "through the executive function of commutation of sentence." Freeman also submitted a letter from the Pima County Attorney's Office, dated April 4, 2020, which surmised that the original prosecutor in Freeman's case (now deceased), likely intended that Freeman would be parole eligible. The Board ultimately denied ADCRR's request to rescind Freeman's parole. Despite the Board's decision, ADCRR continued to detain Freeman.

**¶7**        On June 18, 2020, ADCRR Director David C. Shinn filed a verified complaint for declaratory and special action relief in the Maricopa County Superior Court, seeking a declaration that the Board lacked authority to grant Freeman parole because neither his sentence nor the law authorized it. In response, Freeman raised various counterclaims and moved for a preliminary injunction, requesting immediate reinstatement of his release order. On August 14, 2020, Judge Randall H. Warner denied Freeman's motion for a preliminary injunction, ruling that Freeman was unlikely to prevail on the merits because his sentencing order did not authorize parole.

**¶8**        On September 3, 2020, Freeman, through counsel, and the State of Arizona, through the Pima County Attorney's Office, entered into a stipulation filed in the Pima County Superior Court regarding Freeman's sentence. The stipulation stated that at the time of Freeman's sentencing in 1994, "all Parties involved—Judge Kelly, the State, and Mr. Freeman—believed and intended that after twenty-five years in prison, Mr. Freeman would be eligible for parole, and, if granted parole by [the Board], [] would be released on parole." Thus, the parties requested that Freeman's "sentencing order be corrected to include the word 'parole' as a form of release as intended by the Sentencing Court." The State also stipulated that it would not appeal the amended sentencing order. That same day, Judge Deborah Bernini entered a nunc pro tunc order pursuant to Rule 24.4 of the Arizona Rules of Criminal Procedure amending Freeman's criminal sentence, effective on the date of the original sentencing, to: "Life without the Possibility of Parole and any other type of release, before twenty-five calendar years have been served."

4

**¶9** On September 23, 2020, Freeman renewed his claim for injunctive relief in his case before Judge Warner, arguing that his sentence—as amended by the nunc pro tunc order—clearly conferred parole eligibility. On November 4, 2020, Judge Warner granted Freeman's renewed motion, finding that he was likely to prevail on the merits because his sentence, as altered by the nunc pro tunc order, granted parole eligibility. Judge Warner reasoned that Freeman's modified sentence was, like the one in *Chaparro*, illegally lenient but final because the State did not appeal the nunc pro tunc order. On November 19, 2020, Judge Warner ordered ADCRR to release Freeman on parole. On December 8, 2020, ADCRR released Freeman. Shinn appealed the grant of preliminary injunction.

**¶10** The court of appeals affirmed, holding that Judge Warner did not abuse his discretion by relying upon *Chaparro* to determine that Freeman's sentence, as modified by the nunc pro tunc order, conferred parole eligibility. *Shinn v. Arizona Board of Executive Clemency*, 2021 WL 4859688, at *3 ¶¶ 13–15 (Ariz. App. Oct. 19, 2021) (mem. decision). The court concluded that under *Chaparro*, Freeman's modified sentence, even if illegal, was no longer appealable and was, therefore, illegally lenient but final. *Id.* ¶ 15. The court, relying primarily on *State v. Johnson*, 113 Ariz. 506 (1976), also held that the nunc pro tunc order was procedurally proper because it modified Freeman's sentence to "accurately reflect[] the sentence [Judge Kelly] believed he imposed" in 1994. *Id.* ¶ 13.

**¶11** We granted review to consider the scope of a court's nunc pro tunc authority and the voidability of judgments, recurring issues of statewide importance. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

**¶12** The task before us is to resolve competing views on the scope of a court's nunc pro tunc authority to alter a judgment or order and to clarify our courts' jurisprudence on the jurisdictional significance of our post-trial motion procedural rules.

**¶13** We review the trial court's decision to grant a preliminary injunction for an abuse of discretion. *Valley Med. Specialists v. Farber*, 194 Ariz. 363, 366 ¶ 9 (1999). "An error of law constitutes an abuse of discretion," *State v. Bernstein*, 237 Ariz. 226, 228 ¶ 9 (2015), as does an order unsupported by the record, *Boyle v. Boyle*, 231 Ariz. 63, 65 ¶ 8 (App. 2012).

**¶14** To grant a preliminary injunction the trial court must find (1) a strong likelihood of success on the merits; (2) a possibility of irreparable injury to the requesting party irremediable without relief; (3) the balance of hardships favors the requesting party; and (4) public policy favors the injunction. *Fann v. State*, 251 Ariz. 425, 432 ¶ 16 (2021).

**¶15** Here, Shinn contends that the nunc pro tunc order is void and subject to collateral attack because it exceeded the scope of Rule 24.4 by impermissibly modifying Freeman's sentence on the basis of a judicial, rather than a clerical, error. Consequently, Shinn maintains that Judge Warner erred in granting Freeman's preliminary injunction because it was premised upon the void nunc pro tunc order. *See Fann*, 251 Ariz. at 432 ¶ 15 (explaining that a trial court commits error by applying "incorrect substantive law" to the criteria for granting an injunction (citation omitted)). On the other hand, Freeman argues that the nunc pro tunc order merely corrected his criminal sentence to reflect Judge Kelly's intent to impose a parole eligible sentence. Therefore, even if the order was erroneous or improper, it was voidable rather than void and, thus, not subject to collateral attack.

## I.

**¶16** We first address whether Judge Bernini's order was a proper nunc pro tunc order.

## A.

**¶17** An order entered nunc pro tunc (Latin for "now for then") is one "[h]aving retroactive legal effect through a court's inherent power." *Nunc Pro Tunc*, Black's Law Dictionary (11th ed. 2019). This power "is a common law power derived from a court's jurisdiction over its records." *Pirtle v. Cook*, 956 S.W.2d 235, 240 (Mo. 1997) (citing 3 William Blackstone, *Commentaries on the Laws of England* * 407 (1771)). The scope of this inherent power is ministerial and, in its exercise, a "court may not do more than make its records correspond to the actual facts; it cannot under the guise of amending a minute entry correct any judicial error it may have made, or cause an order or judgment that was never in fact made to be placed [on the] record." *Rae v. Brunswick Tire Corp.*, 45 Ariz. 135, 143 (1935). Thus, the proper purpose of an order entered nunc pro tunc "is to record now for then an order *actually* made or a judgment *actually* rendered which through some oversight or inadvertence was never entered upon the records of the court by the clerk or which was incorrectly entered." *Johnson*, 113 Ariz. at 509 (emphasis added) (quoting *Black v. Indus. Comm'n*, 83 Ariz. 121, 125 (1957),

6

*overruled in part by Hash's Est. v. Henderson*, 109 Ariz. 174 (1973)); *see also Am. Sur. Co. of N.Y. v. Mosher*, 48 Ariz. 552, 563 (1936) (The "office [of a nunc pro tunc order] is not to supply omitted action by the court, but to furnish the record of an action really had, where its recording was omitted through inadvertence or mistake."); *State v. Pyeatt*, 135 Ariz. 141, 143 (App. 1982) ("The object of [a nunc pro tunc] entry is to correct the record to make it speak the truth and not to supply judicial action.").

**¶18**      Rule 24.4, as the modern procedural vehicle of the common law inherent power to enter orders or judgments nunc pro tunc, governs the power's exercise. The rule provides that a "court on its own or on a party's motion may, at any time, correct *clerical* errors, omissions, and oversights in the record." (Emphasis added.) Rule 24.4's text expressly limits its application to clerical mistakes or errors, and it mirrors the Arizona jurisprudential rule—orders or judgments entered nunc pro tunc may not embody judicial action. *See State v. Serrano*, 234 Ariz. 491, 493 ¶ 6 (App. 2014) (concluding that Rule 24.4 does not permit the court "to supply judicial action").

**B.**

**¶19**      Having established the narrow parameters of a court's nunc pro tunc authority, we now turn to the facts of this case. Judge Bernini ruled that Rule 24.4 authorized the entry of the nunc pro tunc order modifying Freeman's criminal sentence. Thus, the propriety of the order turns on whether it merely corrected a clerical error or remedied a judicial error.

**¶20**      The record establishes that the nunc pro tunc order essentially remedied Judge Kelly's purported judicial error—his misapprehension of the law at the time of sentencing that the term "release," as used in Freeman's sentence, included the possibility of parole. Arguably, Judge Kelly's misapprehension of the legal meaning of "release" was not a mistake at all because he consistently used the term throughout the sentencing and, at the time, Freeman was ineligible for parole as a matter of law. *See* § 13-703(A) (1993). In any event, even if the court's misapprehension regarding the legal effect of the term "release" could be construed as judicial error, it is distinguishable from a clerical error, which would appear in the recording, rather than the rendering, of the judgment. *See, e.g.*, *State v. Hanson*, 138 Ariz. 296, 304 (App. 1983) ("A clerical mistake involves a failure to record accurately a statement made or action taken by the court or one of the parties." (quoting 8A Moore's Federal Practice ¶ 36.02 at 36–2)). Here, the 1994 criminal case record reveals no clerical errors concerning Freeman's sentence. Indeed, Freeman's sentencing order

mirrored the court's oral pronouncement at sentencing. There, the court pronounced the sentence as "25 calendar years without the possibility of release until those years have been served," and the sentencing order provided that Freeman serve "life, without the possibility of release before 25 calendar years have been served." Moreover, there is no evidence in the record that evinced Judge Kelly's intent to impose a parole-eligible sentence. Thus, absent contemporaneous evidence that Judge Kelly meant to sentence Freeman to life, without the possibility of *parole* before 25 calendar years had been served, and because the sentencing order mirrored the court's oral pronouncement, there was no clerical error.

¶21 Freeman, like the court of appeals, relies on *Johnson* for an alternative rule—one that allows for the correction of clerical *and* judicial errors if they reflect the "intentions" of the parties or the court at the time the original judgment or order issued. *See* 113 Ariz. at 509. In *Johnson*, we observed:

> *The purpose of a nunc pro tunc order is to make the record reflect the intention of the parties or the court at the time the record was made*: "We have consistently held that the function of an order or judgment [n]unc pro tunc is to make the record speak the truth and that such power is inherent in the court. We have made it clear that the court cannot do more than to make the record correspond with the actual facts. It cannot cause an order or judgment that was never previously made or rendered to be placed upon the record of the court. It is to record now for then an order actually made or a judgment actually rendered which through some oversight or inadvertence was never entered upon the records of the court by the clerk or which was incorrectly entered."

*Id.* (quoting *Black*, 83 Ariz. at 125) (emphasis added).

¶22 *Johnson* affords Freeman no relief. In context, the italicized sentence Freeman invokes for his "intentions" test was dicta—a mere incidental phrase that the following passage contradicts. The remainder of the paragraph clarifies that a nunc pro tunc order is confined to correcting clerical errors and does not extend to the parties' unexpressed intentions. Moreover, the nunc pro tunc order that we ultimately affirmed in *Johnson* concerned a scrivener's error by omission evident in the record, *not* a judicial error. *Id.* There, the state moved to dismiss a criminal complaint due to a jurisdictional error, but erroneously failed to include the words "without prejudice" in the proposed order, which the court signed. *Id.*

at 508–09.  The court later issued a nunc pro tunc order clarifying that dismissal of the complaint was without prejudice.  *Id.*  On appeal, this Court held that the nunc pro tunc order was proper because the record reflected that both the court and the prosecution intended that the dismissal be without prejudice as the "prosecutor clearly intended to refile and the court understood this to be the case."  *Id.*  *Johnson* does not supplant Rule 24.4's unambiguous text cabining a court's nunc pro tunc authority to correcting clerical error.

**¶23**　　　　We conclude that the trial court exceeded its authority under Rule 24.4 because it did not remedy a *clerical* error, omission, or oversight in the record.  *See Rae*, 45 Ariz. at 142–43; Ariz. R. Crim. P. 24.4.

## II.

**¶24**　　　　We next consider whether the improper nunc pro tunc order is void or voidable.

### A.

**¶25**　　　　Confusion between void and voidable orders or judgments has marked our jurisprudence for decades.  *See, e.g.*, *Cockerham v. Zikratch*, 127 Ariz. 230, 234–35 (1980); *Collins v. Superior Court*, 48 Ariz. 381, 392–93 (1936).  We have surmised this lack of clarity "may stem from courts' often loose usage of the word 'void.'"  *Cockerham*, 127 Ariz. at 234.  This imprecise usage has led Arizona courts to occasionally "conflate[]" jurisdictional errors with other legal errors, compounding the existing confusion in this area of law.  *State v. Espinoza*, 229 Ariz. 421, 425 ¶ 19 (App. 2012).  We endeavor here to clarify the distinctions between void and voidable orders or judgments.

**¶26**　　　　The fundamental difference between void and voidable orders or judgments is their legal effect and susceptibility to challenge.  A void order or judgment has no legal effect and "may be set aside or vacated *at any time*," *Rico Consol. Mining Co. v. Rico Expl. Co.*, 23 Ariz. 389, 394 (1922) (emphasis added), rendering it subject to "collateral attack," *Tube City Mining & Milling Co. v. Otterson*, 16 Ariz. 305, 310–11 (1914).  Voidable orders or judgments, in contrast, are "binding and enforceable," enjoy "all [of] the ordinary attributes of a valid [order or] judgment until [they are] reversed or vacated," *State v. Bryant*, 219 Ariz. 514, 517 ¶ 13 (App. 2008) (quoting *State v. Cramer*, 192 Ariz. 150, 153 ¶ 16 (App. 1998)), and may "only be modified on [direct] appeal or by [a] proper and timely post-judgment motion," *Chaparro*, 248 Ariz. at 143 ¶ 22 (quoting *Bryant*, 219 Ariz. at 517–18

¶¶ 13, 15).  *See also* Ariz. R. Crim. P. 24.  In sum, unlike void orders or judgments, voidable ones are *not* subject to "collateral attack."  *See Walker v. Davies*, 113 Ariz. 233, 235 (1976).

¶27        The test for whether an order or judgment is void—and subject to collateral attack—was established nearly a century ago in Arizona.  *See, e.g., Lisitzky v. Brady*, 38 Ariz. 337, 342–43 (1931); *Hill v. Favour*, 52 Ariz. 561, 573–74 (1938); *Hershey v. Banta*, 55 Ariz. 93, 100 (1940); *Hughes v. Indus. Comm'n*, 69 Ariz. 193, 197 (1949); *Walker*, 113 Ariz. at 235; *In re. Adoption of Hadrath*, 121 Ariz. 606, 608 (1979).  *Hughes* provides the analytical framework our courts use to determine voidness in Arizona.  In *Hughes*, we reiterated that "a judgment or order is void upon its face and," therefore, "subject to attack at any time," if the court entering the order or judgment fails to satisfy "three elements."  69 Ariz. at 197.  "These elements are (1) jurisdiction of the subject matter of the case, (2) of the persons involved in the litigation, and (3) to render the particular judgment or order entered."  *Id.*  If a court fails to satisfy any one of these three elements, the order or judgment is void and subject to collateral attack.  *Id.*  However, if a court satisfies these elements, even if an order or judgment is erroneous, it is merely voidable and immune from collateral attack.  *See Cockerham*, 127 Ariz. at 235 ("It is important to remember that, at least with respect to jurisdiction, 'void' is not synonymous with 'wrong' or 'erroneous.'").

## B.

¶28        We now apply the *Hughes* test to determine whether the nunc pro tunc order is void and, thus, subject to collateral attack.

¶29        Here, the parties do not contest the first two elements of the *Hughes* test concerning the nunc pro tunc order; the trial court had subject matter jurisdiction over Freeman's criminal case, *see State v. Maldonado*, 223 Ariz. 309, 311 ¶ 14 (2010) and Ariz. Const. art. 6, § 14, and personal jurisdiction over Freeman and the State.  Consequently, Shinn's challenge to the order necessarily centers on the third element of the *Hughes* test.

¶30        *Hughes'* third element—the jurisdiction "to render the particular judgment or order entered"—is the least examined in our jurisprudence.  69 Ariz. at 197.  In fact, two cases seemingly imply that the third jurisdictional element has fallen out of favor by omitting reference to it while suggesting that void judgments result only from lack of subject matter or personal jurisdiction.  *See Cockerham*, 127 Ariz. at 234 ("Void judgments are those rendered by a court which lacked jurisdiction, either of the subject matter or the parties," while "[e]rroneous judgments," on the

other hand, "are those which have been issued by a court with jurisdiction but which [were] subject to reversal on timely direct appeal."); *Bryant*, 219 Ariz. at 517 ¶ 13. Nearly three decades after *Cockerham*, the court of appeals in *Bryant* recited *Hughes*' third element in the definition of a void order but reinforced the notion that a court's order may be void only if it lacks jurisdiction over the subject matter or parties. *See* 219 Ariz. at 517 ¶ 13 ("An order is voidable or erroneous . . . when the trial court has jurisdiction over the subject matter and parties but the order 'was subject to reversal on timely direct appeal.'" (quoting *Cockerham*, 127 Ariz. at 234)). Freeman seizes on these cases to argue that the nunc pro tunc order modifying his sentence, even if erroneous, is merely voidable because the court had personal and subject matter jurisdiction. We disagree.

**¶31** *Cockerham* did not jettison *Hughes*' third element from the voidness analysis. First, although *Cockerham* involved a voidness challenge to the validity of a default judgment, the parties never raised, nor did the decision implicate, *Hughes*' third element. *See* 127 Ariz. at 233. Second, *Cockerham* cites to *Tube City* and cases that rely on *Tube City*, which itself sets forth the three voidness elements later clarified in *Hughes*. *See id.* at 234. We will not assume that *Cockerham* overruled this Court's longstanding voidness jurisprudence by implication. *Pace v. Pace*, 128 Ariz. 455, 457 (App. 1981) ("[A] well-established and important legal principle will not be deemed to have been overruled by implication in subsequent decisions . . . unless the principle is directly involved and the inference is clear and impelling." (quoting 20 Am. Jur. 2d *Courts* § 232 (1965))).

**¶32** The State argues that *Hughes*' third element establishes that Rule 24—the procedural rule governing post-trial motions—carries jurisdictional consequence. We agree. Indeed, our jurisprudence proves the point. *See State v. Hill*, 85 Ariz. 49, 54 (1958) (holding that an order granting a motion for a new trial "was void for lack of jurisdiction" after being entered outside of the time limit prescribed by the Arizona Rules of Criminal Procedure); *State v. Guthrie*, 110 Ariz. 257, 258 (1974) ("[W]e have held in the past the superior court has no jurisdiction to modify its original judgment" after it has been affirmed on appeal); *State v. Falkner*, 112 Ariz. 372, 374 (1975) (holding that "[t]he trial court exceeded its jurisdiction in modifying the sentence imposed in the absence of such facts that would satisfy the requirements of Rule 24.3."). In fact, we explicitly established this principle in *Falkner* after explaining that superior courts did *not* "have inherent power to modify a sentence." *Falkner*, 112 Ariz. at 374. Specifically, we held that "the trial court's jurisdiction in post-trial motions is limited to that set out in the Rules, and an exercise of that jurisdiction is

permissible *only* upon the grounds specified therein." *Id.* (emphasis added).

**¶33** Freeman challenges the notion that Rule 24 embodies jurisdictional import, relying on *Maldonado* for the proposition that a violation of a procedural rule merely constitutes a "reversible error" but does not divest a court of its jurisdiction. *See Maldonado*, 223 Ariz. at 311 ¶ 15. We are unpersuaded. *Maldonado* is correct—a court does not forfeit *subject matter jurisdiction* by violating a procedural rule because subject matter jurisdiction is conferred exclusively by the Arizona Constitution or the Arizona Revised Statutes. *Id.* ¶ 14. But *Maldonado* involved a challenge to subject matter jurisdiction, not a court's "jurisdiction" to enter an order modifying a sentence. *Id.* ¶¶ 11, 13. Because this case involves a court's authority to enter such an order rather than its subject matter jurisdiction, *Maldonado* is inapposite.

**¶34** Here, the trial court invoked Rule 24.4 to enter the nunc pro tunc order modifying Freeman's criminal sentence, but the court exceeded its authority under the rule because it did not correct a clerical error. Consequently, under *Hughes*' third element, the order is void and subject to collateral attack.

### C.

**¶35** To eliminate confusion between subject matter and personal jurisdiction—*Hughes*' first and second elements—and a court's power to issue an order or judgment—*Hughes*' third element—we urge courts to describe the third element as a court's *authority* to render a particular order or judgment rather than its jurisdiction to do so. *See Marvin Johnson, P.C. v. Myers*, 184 Ariz. 98, 101 (1995) (acknowledging "imprecise use of the word 'jurisdiction'" in cases involving non-jurisdictional errors). Through this lens, it is apparent that *Hill*, *Gutherie*, and *Falkner* did not confuse courts' authority to act under our procedural rules with subject matter jurisdiction, but rather resolved their controversies under *Hughes*' third element— courts' authority to render a particular order or judgment.

### D.

**¶36** To further synthesize our jurisprudence, we note that our holding is consistent with *Black*, our first case addressing "whether a nunc pro tunc judgment may be attacked collaterally." *Black*, 83 Ariz. at 126. In *Black*, we cautioned against the misuse of courts' nunc pro tunc authority

12

and announced a two-pronged test for determining when such an order is subject to collateral attack:

> After a careful consideration of the danger inherent in the improper exercise of the power of the courts to enter orders or judgment[s] *nunc pro tunc*, we have reached the conclusion that if such orders or judgments are to be shielded from collateral attack, the court when directing an entry *nunc pro tunc* must: (1) make a record such that anyone who examines it may determine the nature of the clerical error sought to be corrected; and (2) place upon the face of the judgment or order a finding or recital to the effect that sufficient competent evidence was presented to sustain the order for entry *nunc pro tunc*. Under such circumstances it should not then be subject to collateral attack. Unless the judgment or the record does show such facts, it will be subject to collateral attack. Without this safeguard a judgment *nunc pro tunc* absolutely void for want of jurisdiction would be clothed with the same verity as a valid judgment. The law should never be thus circumscribed.

*Id.* Thus, we established that a nunc pro tunc order may only be used to modify clerical errors and that a court reviewing the propriety of the order may examine the entire record, as we did here, to determine whether the order merely remedied a true clerical error established in the record. Under *Black*, Judge Bernini's nunc pro tunc order did not accurately record what actually happened at Freeman's sentencing; it changed what occurred. *Id.*; *see also City of Phoenix v. Geyler*, 144 Ariz. 323, 327 (1985).

**¶37** We also clarify that *Hash's Estate*'s cursory treatment of *Black* did not overrule its central holding concerning the proper scope of nunc pro tunc orders. *See* 109 Ariz. at 177 ("Anything in the case of [*Black*] which may be inconsistent with or contrary to the foregoing opinion is hereby overruled."). Thus, under *Black*, which is wholly consistent with *Hughes*, the nunc pro tunc order here is subject to collateral attack because (1) it embodied an attempt to correct a judicial rather than a clerical error and (2) the record does not reflect any clerical error.

## CONCLUSION

**¶38** Freeman's original sentence was lawful, but the nunc pro tunc order sought to supplant the legal sentence with an illegally lenient one because the sentencing court and the parties now contend—twenty-six

years after the sentencing hearing—that Judge Kelly intended to impose an illegal sentence.  Crucially, the trial court record is devoid of any evidence of this unexpressed intention.  We cannot countenance this use of the nunc pro tunc authority because it is wholly inconsistent with Rule 24.4's express terms and purpose, as well as our jurisprudence.  Because the nunc pro tunc order is void, we hold that Judge Warner erred in relying upon it to grant Freeman's preliminary injunction.  *See Fann*, 251 Ariz. at 432 ¶ 15 ("An abuse of discretion exists where the trial court clearly erred in finding the facts or applying them to the legal criteria for granting an injunction, or if the trial court applied the incorrect substantive law.") (citations omitted) (internal quotation marks omitted).  Our opinion, however, does not foreclose the trial court's consideration of any other grounds not before this Court that may support injunctive relief.

¶39        For the reasons set forth, we vacate the court of appeals' decision, reverse the trial court's order granting preliminary injunctive relief, and remand the case to the trial court to determine whether Freeman's requested injunctive relief should be granted for reasons other than the void nunc pro tunc order.